## Andrew Mok and another v. The Detroit Building and Savings Association No. 4.

*Building and savings associations: Constitutional law: Legislation: Amendments of statutes.* The act for the incorporation of building and savings associations (*Laws of 1869, p. 305; Comp. L. 1871, ch. 93*) which provides for their organization and incorporation under the provisions of the act of 1855 (*Laws of 1855, p. 285; Comp. L. of 1871, ch. 92*), for the incorporation of companies for building and leasing houses, etc., and this in turn authorizes the formation of the latter corporations under the provisions of the act for the incorporation of mining and manufacturing companies (*Laws of 1853, p. 53; Comp. L. 1871, ch. 95*), but which undertakes at the same time to dispense with some things required by the act last referred to, and to make some radical changes, is held void, for the reason that it infringes the constitutional inhibition against revising, altering or amending any law]by reference to its title only, or without re-enacting and publishing at length the act revised or the section or sections altered or amended.

*Statute construed: Building and savings associations: Amendment of statutes.* The act in question, while for the purposes of mining and manufacturing companies it does not alter or amend the prior act to which it thus by indirection finally refers for the model after which building and savings associations are to be formed, still does, as regards the objects and purposes of these latter associations, in legal effect incorporate the prior act into, and make it a part of itself, but with several changes and modifications, and this without the 're-enactment of the sections changed or modified.

*Legislation: Reference to prior acts: Organization of corporations.* The course adopted in this statute, of referring for authority to organize corporations to an act the whole purpose of which was to give permission to find in another act the outline of an organization which it did not itself provide, and under which, therefore, it was impossible to organize, instead of referring directly to the act thus by indirection really intended, is criticised as tending to mislead and confuse.

*Amendment of statutes: Statute construed.* This legislation is not capable of being sustained as an amendment by implication; since all the alteration the legislature apparently designed to make in the act of 1853, to adapt it to the purposes of the act of 1869, are made in express terms.

*Constitutional law : Organization of corporations : Legislation : Reference to pre-existing law.* Whether or not a statute could be sustained which merely refers a body of associates to a pre-existing law which is suited to their purposes and under which they are to be permitted to incorporate themselves:—*Quære?*

*Constitutional law : Amendments of statutes.* The statute in question is as much within the mischief at which this constitutional inhibition was directed, notwithstanding it leaves the prior act for some purposes untouched while altering it after the forbidden method for others, as it would be were the prior act one for the incorporation of the same kind of associations, and had the later act attempted for the purposes of such associations similar modifications thereof; and this would be manifestly in conflict with both the letter and the spirit of the constitutional provision.

*Corporations : Mining and manufacturing corporations : Building and savings associations : Indefinite legislation : Organization of companies.* The act of 1869, taken in connection with that of 1853, does not furnish any distinct outline or prescribe any definite course of action by which associates can be sufficiently guided in perfecting organizations under it; and the two acts have purposes and objects so entirely different that it is impossible to say how much or what part of the general mining and manufacturing incorporations act was meant to be applicable to building and savings associations.

*Heard October 27 and 28.     Decided January 6.*

Appeal in Chancery from Superior Court of Detroit.

This was a bill for an accounting to ascertain the amount equitably due upon a mortgage given by the complainants to the defendant, and, upon payment thereof, for a discharge or cancelment of the mortgage; and it prayed for an injunction against proceedings to foreclose the same. The mortgage was given for the sum of one thousand dollars, but only six hundred and forty-four dollars were actually received by the complainants in consideration thereof, the residue being retained as a premium for priority of loan under the rules of the society.     The complainants had paid into the company, before receiving this money and executing the mortgage, in weekly dues, the sum of eighty-four dollars, and afterwards paid in the sum of two dollars weekly as dues, and one dollar and twenty cents weekly as interest, from May 23, 1870, to February 24, 1874.     The computation was made up by calculating interest, from the date of payment to the date of the mortgage, upon the weekly dues paid in before the giving of the mortgage, and deducting the amount of such payments and interest, from the . sum received in consideration of the mortgage, and

taking that balance as a principal, the subsequent weekly payments were applied as partial payments. This left unpaid on the mortgage on February 24, 1874, when complainants ceased paying, the sum of two dollars and twelve cents. The court below decreed that on payment of that sum and interest the mortgage be canceled and discharged, and granted a perpetual injunction against foreclosure. From this decree the defendant appealed.

The condition of the bond given with said mortgage, and to which it was collateral, was as follows:

" The conditions of this obligation are such that, whereas, the said Andrew Mok is a member of said association, and the owner of eight shares of its stock, on which stock he, the said Andrew Mok, on the seventeenth day of May, 1870, made a loan of the sum of one thousand dollars, pursuant to the provisions of the constitution and by-laws of said association, on which sum of one thousand dollars they agree to pay said association interest, to-wit: the sum of one dollar and twenty cents weekly in advance, from the date thereof, on or before the Monday of each and every week during the existence of said association, and in like manner at the same time and for the same period, to pay a weekly assessment of twenty-five cents on each and every share of stock owned by him, and on which he has taken a loan as ·aforesaid, and also to pay all fines that may be legally assessed against him under and by virtue of the said constitution and by-laws, or any amendments that may be made thereto; also to keep the buildings, on the premises mortgaged to secure the conditions of this obligation, insured during the existence of this association, against loss and damage by fire, to the acceptance of the directors of said association, in the sum of not less than five hundred dollars, for the benefit of said association, and to pay all taxes and assessments which may be levied on said mortgaged premises during the existence of said association, including all taxes that may be assessed on the loan or money here-

30 mich.—65.

by secured, and to comply with all and singular the constitution and by-laws so far as they are binding upon him.

" Now, therefore, if the said Andrew Mok shall promptly pay to said association said weekly dues or assessments as aforesaid, and the interest upon the sum loaned as aforesaid, amounting to the sum of three dollars and twenty cents, on or before the Monday of each and every week during the existence of said association as aforesaid, and shall pay all fines that may be legally assessed against him as aforesaid, shall insure and keep insured said mortgaged premises as aforesaid, shall pay the taxes which may be legally levied upon them and upon the sum loaned, during the life of said association, and shall comply with all and singular the conditions of said constitution and by-laws so far as they are binding upon him, then this obligation shall be void, otherwise be and remain in full force and virtue.

" Provided, that in case said Andrew Mok shall be in fault in paying said sum of money or any part thereof, as aforesaid, for the period of sixty days after the same becomes due, then the sum of money loaned as aforesaid, shall become immediately due and collectible, with the interest in this bond specified."

The mortgage contained a similar condition.

The articles of association, the constitution and the by-laws of said defendant association are given below.*

---

* ARTICLES OF ASSOCIATION.

" I. The undersigned residents of the city of Detroit, in the state of Michigan, do hereby agree together and form themselves into a corporation under an act of the legislature of the said state, entitled an ' Act to authorize the corporation of Building and Savings Associations under the provisions of chapter fifty-six of the Compiled Laws and the acts amendatory thereof,' approved April 5th, 1869.

" II. The said corporation shall be called the ' Detroit Building and Savings Association No. 4,' and shall continue for thirty years. The business thereof shall be transacted in the county of Wayne, in said state, and the office for the transaction of business shall be in the said city of Detroit.

" III. The capital stock of said corporation shall be two hundred and fifty thousand dollars, and shall be divided into two thousand shares, and no member shall hold more than twenty shares.

" IV. Every member shall be entitled to one share of such stock by paying an initiation fee of ten cents, and twenty-five cents on

*Gartner & Burton, Alfred Russell, F. H. Canfield* and *S. T. Douglass*, for complainants.

*Chipman, Dewey & Hawes, D. C. Holbrook, G. V. N. Lothrop* and *Theodore Romeyn,* for defendant.

COOLEY, J.

The constitution of the state provides that "No law shall be revised, altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length."—*Art. IV., § 25.* The application of this section to certain acts of legislation is the principal question presented by this record. No one questions the great importance and value

---

Monday in each week. Persons who shall become members of said corporation after the first payment has been made, shall pay all the weekly dues paid by original members, and an initiation fee of not more than fifty dollars.

"V. The exact object of the corporation, and the benefits to which each member shall be entitled, are, to make loans to members and enable them to procure houses and places of business.

"VI. All securities received by the corporation shall be on real estate or on the stock invested in the corporation, and all loans shall be given on security only.

"VII. The capital of said corporation shall be used in loans to members to carry out the purpose of the corporation.

"VIII. The maximum initiation fee may be fifty dollars on each share, and the maximum weekly dues may be twenty-five cents on each share.

"IX. Each share shall entitle the holder of the same to a loan of one hundred and twenty-five dollars from the corporation, for which he shall give sufficient security. At every regular weekly meeting whenever there are one hundred and twenty-five dollars or more in the treasury, the money shall be sold in loans of one hundred and twenty-five dollars, and the shareholder who bids the highest premium shall receive it.

"X. Every shareholder shall pay on each loan of one hundred and twenty-five dollars he receives from the corporation, an interest of fifteen cents from and after the time the same is awarded to him, on Monday in each week, as also the weekly dues of twenty-five cents, until the dissolution of the corporation.

"XI. As soon as one and every shareholder shall have received on every one of his or her shares the sum of one hundred and twenty-five dollars, that is including the premiums that have been granted by the shareholders themselves, the association shall be dissolved and all mortgages given to the same shall be discharged and returned to their respective makers. The following are the names of shareholders, their places of residence, and the number of shares owned by each of them. * * *

of the provision, nor that the evil it was meant to remedy was one perpetually recurring, and often serious. Alterations made in the statutes by mere reference, and amendments by the striking out or insertion of words, without reproducing the statute in its amended form, were well calculated to deceive and mislead, not only the legislature as to the effect of the law proposed, but also the people as to the law they were to obey, and were perhaps sometimes presented in this obscure form from a doubt on the part of those desiring or proposing them of their being accepted if the exact change to be made were clearly understood. Harmony and consistency in the statute law, and such a clear and consecutive expression of the legislative will on any given subject as was desirable, it had been found im-

"XII. There shall be nine directors of said corporation, who shall be elected on the 23d day of August in each year at a meeting of the shareholders, to be held in the office at the city of Detroit. The officers of said association shall be a president, vice president, treasurer, financial secretary, recording secretary, and such other officers as the by-laws may provide, to be appointed by the directors. The duties of said officers shall be prescribed by the by-laws."

CONSTITUTION.

"ARTICLE I. This society shall be called the Detroit Building and Savings Association No. 4. Its transactions shall be limited to Wayne county, and its office be situated in the city of Detroit, state of Michigan.

"ARTICLE II. The object of the society shall be to furnish its members from the accumulation of their weekly savings as dues, fines, etc., the means to build or buy a house or homestead, or toward establishing a business.

"ARTICLE III. The capital of the society shall consist of two hundred and fifty thousand dollars, divided in two thousand shares equally. No member shall be allowed to have more than twenty shares.

"ARTICLE IV. The capital of the society is to be employed as loans to its members in order to fulfill the object of the society.

"ARTICLE V. The security necessary to secure a loan shall consist in mortgages on real estate, or in assigning over to the society a sufficient amount of partly paid up shares.

"ARTICLE VI. Every member, by paying an initiation fee of ten cents and a weekly due of twenty-five cents, is entitled to one share, said weekly dues to be paid on Monday of each week. Those who enter the society after its formation or first paying in must make all the back payments, and also the initiation fees, as the society may determine, but the back payments and fees are not to exceed the amount of fifty dollars on one share.

"ARTICLE VII. Each shareholder shall be entitled to a loan of one hundred and twenty-five dollars on each share, for which he must give the society sufficient security.

practicable to secure without some provision of this nature; and as the section requires nothing in legislation that is not perfectly simple and easily followed, and nothing that a due regard to clearness, certainty and simplicity in the law would not favor, it is probable that if the requirement has at any time been disregarded by the legislature, the default has proceeded from inadvertence merely. Whether there has been such inadvertence in the legislation now questioned is the point in dispute.

The act "to authorize the formation of corporations for building and leasing houses and other tenements" · was passed by the legislature of 1855, and in a single section it provided that corporations for the purpose indicated in the title might be formed under the provisions of an act "to

"ARTICLE VIII. At each regular weekly meeting, when there is one hundred and twenty-five dollars or more in the treasury, the money is to be disposed of in loans of one hundred and twenty-five dollars, and the member who bids the highest premium is to receive it.

"ARTICLE IX. Each member, after receiving a loan, must pay, besides his weekly dues of twenty-five cents on each share, an additional· sum of fifteen cents interest on each share on which he has received a loan, on Monday of each week, until the final dissolution of the society.

"ARTICLE X. As soon as each shareholder will have received one hundred and twenty-five dollars on each share, including the premium by himself offered, the society shall be dissolved, and all mortgages shall be canceled and restored to the mortgagors.

"ARTICLE XI. A board of directors (trustees), consisting of nine members, shall direct all the business of the society. The annual election of said board of trustees shall take place in a general meeting of the society on the third Monday in August in each year.

"ARTICLE XII. The officers of the society are a president, vice president, treasurer, financial secretary, recording secretary, and such other officers as the by-laws may determine, to be selected annually, according to the by-laws, from the board of trustees, of members of the society. Their duties and obligations are specified in the by-laws."

BY-LAWS.

"1. The president directs all the meetings of the society; in his absence, the vice president. The president must sign all the money orders before they go to the treasurer, appoint from among the trustees the necessary committees to investigate the proffered securities of members who have bought money from the society, and attend to the foreclosure of mortgages, if that should become necessary. All mortgages and other papers, or obligations, are also entrusted to his safe keeping.

"2. The treasurer has charge over all the moneys of the society as fast as they are received and transferred over to him by the finan-

authorize the formation of corporations for mining, smelting or manufacturing iron, copper, mineral coal, silver or other ores or minerals, and for other manufacturing purposes," approved February 5, 1853, and should have and possess all the rights, and be subject to all the liabilities provided in said act and the acts amendatory thereof.     A second section was subsequently added making special provision for corporate debts and obligations, and the acquisition, control and disposition of real and personal property, but they are not material here.     The first section was left to stand as first enacted, and the only method provided for the incorporation of building and leasing companies was by the reference made to the previous act, which had in view organizations for purposes essentially different.     This was

cial secretary.  He must pay all orders drawn on him, and properly signed by the president and financial secretary of the society.     He must keep his books and treasury always open to the inspection of the trustees, and give a quarterly report of all moneys received and disbursed by him.     For faithful performance of his duties he must give a bond, signed by two sureties, to the amount of four thousand dollars.

"3.   The duties of the financial secretary shall be to carry all the money received properly into the books for that purpose, to receive all the moneys paid into the society, and give a receipt for the same ; then to transfer them over to the treasurer and take his receipt, and to give a detailed account of all the receipts every quarter to the society.     He must keep in his possession the insurance policies of mortgagees, and notify the insured a few days before the expiration of their policies, of the same ; should the party insured neglect the renewal of his policy for the benefit of the society, then it shall be the duty of the financial secretary to effect such renewal at the proper time at the expense of the society.     His bond for a proper fulfillment of these duties, signed by two sureties, will be one thousand dollars. His salary will be fixed from time to time by the society.

"4.   The duties of the recording secretary are to record all the acts of the society and of the trustees, as also the amount of receipts and the disbursements in the proper book.     He will receive twenty-five cents for each meeting.

"5.   The trustees will, at each meeting of the society, appoint from among their number a controller, who will keep watch over the incoming money of the society.     The trustees will appoint, after the annual meeting of the society, from among their number, a president and the other officers, as directed in the constitution and these by-laws, who will hold their office for one year, or until their successors are nominated or appointed ; should any vacancies occur during the year the trustees will have power to fill them, and also to remove improper officers.     In all cases where loans have been obtained, the trustees must examine into the sureties to see that they are all sufficient, and vote on their acceptance.

at least awkward, especially as some of the rights and liabilities given and provided for by the mining and manufacturing incorporations act were from their nature peculiar to the kinds of business those incorporations were to engage in, and to the reports they were required to make thereof; so that it could not be strictly true that the building and leasing corporations would possess all the rights and be subject to all the liabilities of the corporations after the model of which they were to be formed.

The act by permission of which the defendants claim to be incorporated was passed in 1869, and by its first section provides that " corporations for building and savings associations may be formed and incorporated under the provisions " of the act of 1855, the substance of which has been al-

---

" 6. The trustees shall appoint a notary who must execute all mortgages or other documents of the society, according to rules and directions given by the trustees, and also to investigate the title and other business connected with the offered security, and to have all mortgages properly recorded. His charges must be paid by the member taking the loan.

" 7. Each shareholder to whom the society has granted a loan shall, before receiving the money, give such security as the constitution prescribes, or as the trustees may deem proper to accept. He must agree faithfully to pay all dues for his shares, and also the interest, as well as fines, if such there should be, promptly; that he will have the buildings upon which mortgages have been issued properly insured against fire; that he will pay all taxes or other assessments upon the property when they become due, and conform in all things to the constitution and by-laws of this society. He will have the insurance policies properly transferred over and delivered into the society.

" 8. Should any member neglect for four weeks from the time a loan has been granted to him, to give sufficient security therefor, he shall be held responsible for any losses which may accrue to the society by such neglect, and the money be returned to the use of the society. Any member to whom the society has granted a loan shall be privileged to take out as many shares as he possesses, at the same premium, if said member will, immediately after the granting of said loan, mention the amount of shares he wishes advanced.

" 9. Should there be one hundred and twenty-five dollars in the treasury, and no member applies for a loan, the trustees shall determine in what manner the money may be most profitably disposed of; in case of necessity, the shareholders who have not yet had any loans may draw by lot; such member on whom the lot falls must take one share; should he not be able to give good security, the trustees must deposit the amount of money drawn on that share for the use and benefit of said member, who must also pay, besides the weekly dues, fifteen cents interest each week, until the dissolution of the society.

ready given. Now, as it was impossible to organize under an act the whole purpose of which was to give permission to find in another act the outline of an organization which it did not itself provide, the reason for referring to the act of 1855 is not very manifest. Had there been any desire or design on the part of the draftsman of the act of 1869, to avoid presenting to the mind of the legislature the incongruities that must result from the attempt to organize corporations of a nature essentially different under the same enabling statute, the wording of the act was well adapted to that end, for while it mentions building and leasing associations as those upon the model of which the corporations for building and savings purposes,—which might well be supposed akin to them,—were to be formed, mining and man-

".10. For non-payment of his weekly dues, a member must pay a fine of five cents on each share for each week. If a member has received a loan from the society, and should neglect to pay his weekly interest, he must pay a fine of five cents a share for each negligence. If the unpaid fines shall equal the dues paid in on each share, this share shall be property of the society. As soon as any member shall be in arrears two months, he shall lose his vote until such time as he shall have paid up such arrearages. The trustees may, in case a member be sixty days in arrears with his weekly dues or fines, put his shares up at auction at any regular meeting of the society in their office. Such a sale must be published at least thirty days in one paper published in Detroit. The receipts of such sale shall be used towards paying the dues, fines, etc., as well as towards defraying the expenses of said sales, and the rest, if there be any, shall be given to the owner thereof. The purchaser of said shares becomes a member by signing the constitution and by-laws.

"11. Every member shall be permitted to transfer his shares to any other person, but only through the financial secretary; such transfer to another member costs fifty cents; to one not a member, one dollar. No share can, however, be transferred to any other person as long as any dues, fines or other obligations remain unpaid by the original possessor.

"12. Such members as have received a loan from the society and given proper mortgages in security, and who shall be in arrears with weekly dues, interest or fines, for sixty days, such mortgage shall be foreclosed, and then the balance unpaid on mortgage, together with the interest, shall be immediately due and payable.

"13. Every member shall have the right, after giving the trustees written notice, to withdraw his shares from the society, and when sufficient money is in the treasury, such member shall receive all the money he has paid in on his shares before the expiration of one year without interest, after one year's time with six per cent. interest.

"14. The directors or trustees, officers and committees, shall receive no pay for their services unless especially provided for in the by-laws.

ufacturing corporations, which were to be the real model, were not once named, nor was the act referred to under which they are formed, except blindly by its number as a chapter of the compiled laws. But, whatever the real purpose, it cannot fail to be the subject of conjecture, when we are thus sent to one act for no other ostensible object than to be there told we must go to still another, when a direct reference to such last mentioned act in the first instance would have been much more simple, natural and proper, and much less confusing and questionable.

But while the act of 1869 referred parties in this circuitous manner to that of 1853 for the requirements in organization, it undertook at the same time to dispense with some things required by that act, and to make some changes. It provided that the articles of association need not state the amount of capital stock actually paid in; that it should be contributed in initiation fees and in weekly

"15. All documents, letters and money, as well as all other property of the society, in the possession of any officer, must be delivered over to his successor in office or to the trustees, as soon as his term of office expires, or if he should be dismissed from office.

"16. The president and financial secretary shall be empowered, after a resolution to that effect shall have been passed by the directors, to acknowledge the payment of mortgages, and to cancel the same on the books for that purpose, by the use of the seal of the society.

"17. No officer or trustee shall be absent from any meeting of the society or of the trustees, unless he be absent from the city, or be prevented by sickness or sufficient reason. The fine for such offense shall be one dollar. Officers having important documents in their possession shall be fined two dollars for each absence. The regular weekly meetings of the society shall take place on Monday of each week at $7\frac{1}{2}$ o'clock P. M., in their regular chosen places of meeting. After each meeting of the society, the trustees shall hold a meeting, which they can, however, postpone to any other time. Twenty-five members shall be necessary to make a quorum of the society, and five trustees to make a quorum of trustees.

"18. Every member must sign the constitution and by-laws before he can participate in the advantages of the society.

"19. After the death of any member, his lawful heirs, executors or administrators, shall assume all his obligations and share all his benefits.

"20. All proposals to alter or amend these by-laws must be made in writing, and signed by at least seven members of the society. The majority of the shareholders shall decide upon their acceptance in a meeting for that purpose, which must be published one week before the holding of such meeting."

or monthly sums as should be provided by by-laws; that it should not exceed three hundred thousand dollars; that certain things specified should be set forth in the articles which were not required by the act of 1853; that in addition to facts required to appear by the annual reports under the last mentioned act, the uses of all moneys received and expended during the year should be reported; that no money should be used for any persons not stockholders; that parents and guardians might take stock for minor children and wards, and that no premium given for priority of loan or acquisition of building, or discount given on the redemption of shares, should be deemed usurious. This is a statement of the whole substance of the act, and it will be seen that its provisions are few and vague, and that for the whole frame-work of the corporations to be formed by its permission the associates are referred to the act of 1855, which in turn refers them to the act of 1853, where, except in a few particulars, and most of those unimportant, they are to find their law and their guide in organizing and conducting their corporate affairs.

Is this act constitutional? We have hitherto had very little occasion to consider the section of the constitution under which this question is made, because there have been few cases in which such a question could plausibly be made. Amendments of statutes by implication, we have held, are not forbidden by it.—*People v. Mahaney, 13 Mich., 481; Underwood v. McDuffee, 15 Mich., 361.* But this is not a case of that nature, as all the alterations we have reason to suppose the legislature designed to make in the act of 1853, to adapt it to the purposes of the act of 1869, are made in express terms. The present case is certainly peculiar. In one sense the mining and manufacturing act has not been amended at all, and it stands on the statute books, for all the purposes of the associations originally contemplated by it, quite unaffected by the act of 1869. But as regards the objects and purposes of building and savings associations it is quite otherwise. If private individuals had by contract

in like manner referred to some pre-existing writing which was to be the measure of their rights and obligations, except as by the contract may otherwise have been provided, it would have been said that the previous writing as thus modified had been incorporated in and made a part of the contract itself. The case is the same here. The act of 1853 has been, for the purposes of building and savings associations, incorporated in and made a part of the act of 1869, but with several changes and modifications, and these not made by the re-enactment of the sections changed or modified, but only by indicating the extent of the changes, leaving the parties concerned to fit the new act to the old as best they may. It is unfortunate for those who have had occasion to attempt it, that this case illustrates so forcibly the evils of this species of legislation; for on many points it is impossible, in seeking for the legislative intent, to get beyond the regions of pure conjecture.

It may be desirable here, in order to avoid all possible misapprehension, to state distinctly what the act of 1869 is not. It is not a statute which merely refers a body of associates to a pre-existing law which is suited to their purposes, and under which they are to be permitted to incorporate themselves. Upon a statute of that description we abstain from remarking, because the act of 1869 assumes that the act of 1853 was in many respects unsuited to its purposes, and undertook to modify and adapt it to them. It was in fact much more unsuitable than the legislature, judging from the changes made, seem to have supposed, as we shall have occasion to point out further on; but for our present purposes it is sufficient to state, that some changes were deemed essential, and that they were made by indirection. Had the act of 1853 been one for the incorporation of building and savings associations, a subsequent act attempting for their purposes such modifications of it as were designed to be made by the act of 1869 would be so manifestly in conflict with both the spirit and the letter of the constitution as to preclude any plausible argument in its

support; and it is not readily perceived that it can be less so because of its leaving the original act untouched for some purposes while altering it after the forbidden method for others.

It is possible that there may lie back of the constitutional difficulty the question whether the act of 1869, taken in connection with that of 1853, has prescribed any definite course of action by which associates can be sufficiently guided in perfecting organizations under it.   It is certain at least that these associates have not found the two acts sufficient or satisfactory for their . purposes, and in several particulars have made law for themselves in. framing their articles.  . The first act required the articles of association to state distinctly and definitely the term of existence of the proposed corporation, not to exceed thirty years.   This provision has not been followed in this instance, but the associates provide by their articles that the association shall be dissolved " as soon as one and every shareholder shall have received on every one of his or her shares the sum of one hundred and twenty-five · dollars, that is, including the premiums that have been granted by the shareholders themselves."   This indefinite period may be five years, or it may be twenty-five; it is an ' uncertain period which may depend  upon the success of the corporation or the will of its members, while the statute contemplated a certain and fixed period subject to no such contingency.   It is perhaps unfortunate that in thus departing from what would seem the purpose of the statute the associates did not succeed in making their own meaning more unequivocal;  for this provision leaves us in very great doubt whether by the clause " as soon as one and every shareholder shall have received on every one of his or her shares the sum of one hundred and twenty-five dollars," etc., we are to understand, as soon as the corporation shall have means sufficient to make such payments, or whether, on the other hand, the meaning is, as soon as the last shareholder shall have applied for and received his share under

the rules of the association. Either construction is perhaps admissible, but the latter seems most natural, and, if lawful, might continue the corporation at the option of non-borrowing members for the full period of thirty years, which by the constitution is made the limit of all such corporations, and might result in very great injustice and oppression to borrowers. The other construction would be less open to objection on the score of justice, and would be likely to terminate the existence of the corporation within a short period unless it should be managed badly and meet with serious losses.

The departure from the statute in some other particulars is equally manifest. Under the act of 1853 the shares of stock were to be twenty-five dollars each. There is no intimation in the act of 1869, that any departure from this standard was to be permitted. Nevertheless these associates have fixed their shares at one hundred and twenty-five dollars each. With the same warrant they might as well have made them either ten dollars or ten thousand.

This may be considered matter of form only, but some other particulars may be noticed of more importance. The act of 1853 as amended makes particular provision by its fifth section for annual reports to be filed in the office of the secretary of state, and of the county clerk. The act of 1869 contemplates a similar report, and enumerates some further points to be covered by it. The failure to make the report under the first act is made a misdemeanor in the directors, punishable by a heavy fine; but the section which provides therefor applies by its terms only to *mining* companies, and it is, to say the least, matter of very grave doubt if the failure of the directors of building and savings associations to make report is punishable at all, or whether if they neglect to make one there is any means of compelling it. Counsel consulted on the subject might very probably advise them in entire sincerity that criminal laws were not to be extended by construction, and that, as this penalty by its terms was made applicable to mining compa-

nies only, the directors of building and saving associations could disregard the requirement of a report with impunity. It is not likely this was what the legislature intended, but it is one of the probable results of attempting to make incongruous things harmonize.

Are these building and savings associations to pay any taxes? On this very important subject we are left wholly to conjecture. Mining and manufacturing corporations are required to pay taxes, and the incorporation act contains penal provisions to compel separate reports as a basis of taxation.—See §§ *18, 19, 20, 21, 23.* Permission to companies of another description to become incorporated "under the provisions" of this act would seem to imply an understanding that they were to do so subject to this very important requirement, unless the permissory act expressly exempted them, which the act of 1869 does not. But here again there are no penal provisions applicable to building and savings associations, by means of which to compel the performance of any duty looking to taxation, and no basis is prescribed according to which taxation can be laid. We may suppose, therefore, that the legislature regarded these associations as being rather benevolent or charitable societies than societies for the pecuniary profit of their members; and, consequently, the proper subjects of exemption; or, with equal reason, that, without examining in detail the act for the incorporation of mining and manufacturing companies, they assumed that as all companies organized under it were taxable, so all permitted to organize "under its provisions" would also be taxable. Whatever intent may have been in the mind of the legislature, we have no reason to believe that if these associations were to be incorporated for the pecuniary profit of their members, or of the non-borrowing portion thereof, the legislature would intentionally have sanctioned it, without some adequate provision compelling them to bear their proportion of the public burdens.

The act of 1853 makes the stock subscribed to corpora-

tions formed under it subject to be called in at any time by the directors. The act of 1869 makes the capital stock payable "in initiation fees and in weekly or monthly sums of money, as shall be provided by the by-laws of said corporations." Under this provision it seems to be understood by those who organized the defendant association, that subscribers may be compelled to make the weekly or monthly payments, not only until the whole one hundred and twenty-five dollars per share is paid in, but afterwards as long as the corporation exists; and those who borrow from the corporation are required to give security that they will do so. What warrant there can be for this we do not very clearly perceive. A subscription for stock can call for no larger payment than the sum subscribed, and when that is completed the obligation is fulfilled. Whether by-laws requiring payments to be kept up during the whole life of the corporation can be burdensome or unjust must depend upon the period of its existence, and the provision, if any, for the distribution of its assets. If, as the complainants understand the organization in this case, it is to continue until the expiration of thirty years, or until the non-borrowing members voluntarily wind up its affairs, and its assets are then to be divided among those who have not been borrowers, the injustice will be so enormous that no legislature would ever for a moment consider the proposition to permit it; for it might result in compelling the poor borrowers to pay many times over the sums borrowed, and to submit during the life of the corporation to have their real estate mortgaged to secure weekly or monthly payments on "stock," in the accumulations of which they, although "stockholders," were not to share. If, on the other hand, the corporation is to be dissolved as soon as each stockholder can have made up and paid over to him the amount of the stock he has subscribed for, then there can be no serious inequality in the positions of borrowing and non-borrowing members, provided the statute or the articles of association made proper provisions for determin-

ing when the necessary moneys had been realized, and how the dissolution might be required or compelled; provisions exceedingly important in the case of corporations where continuous payments are required, but which have not been made for these corporations in any manner.

The twenty-fifth section of the act of 1853 provides that "the legislature may at any time, for just cause, rescind the powers of any corporation created pursuant to the provisions of this act, and prescribe such mode as may be necessary or expedient for the settlement of its affairs. The legislature may repeal, alter or amend this act." This last provision was not necessary, as the power existed under the constitution independent of it; but the first was important. Nevertheless it is in the nature of a penal provision, and its application to the building and savings associations, without an express legislative declaration to that effect, is exceedingly doubtful. Other important provisions of the act would be equally affected by the principle that punitory laws are to be construed strictly.

But it is needless to extend this sort of inquiry further. It must be perfectly manifest that the three acts under which this building and savings association claims to be organized furnish no distinct outline for such an incorporation, and that it is impossible to say how much or what part of the general mining and manufacturing incorporations act was meant to be applicable to them. Counsel called upon to frame articles for them under that act could at best only go from section to section, and say, this section is applicable, and that is not; this it is politic to appropriate, and that to reject; but when he had concluded his labors, the result could only be the formation of a corporation under a law which, by selection and rejection of sections and parts of sections, he had made for the purpose, and not under any law which the legislature had made as his guide; for the act of 1853 has purposes and objects so entirely different that it cannot possibly be a guide in the premises.

The question then recurs whether the act of 1869 can be supported. In our opinion, formed upon deliberate consideration, and after most able argument, it cannot. While the act of 1853 is left untouched as to the organizations contemplated by its provisions, it is, for the purposes of building and savings associations, altered in most important particulars in disregard of the constitutional requirement. The fourth and fifth sections are expressly amended without re-enacting them in full, and perhaps the same should be said of the eleventh, while the others are capable of being made available only by treating the act as revised to meet the exigencies of the case. Unfortunately the revision is not clearly made by the statute, but is left to the varying opinions, wishes and purposes of those who may have occasion to avail themselves of this legislation. What has been attempted here is, to duplicate an act, but at the same time to accommodate it by indirect amendments to a new class of cases, in disregard of the constitutional provision which requires each act of legislation to be complete in itself, and forbids the enactment of fragments which are incapable of having effect or of being understood until fitted in to other acts after by construction or otherwise places have been made for them. No such legislation can be sustained. Persons claiming such extraordinary powers and privileges as some which are claimed here, should be able to claim them under legislation which is clear and unequivocal, and which leaves no doubt of the purpose of the legislature to grant them.

The whole act of 1869 being in our view invalid, we give no attention to minor objections. The decree appealed from must be affirmed, with costs.

The other Justices concurred.