CITY OF DETROIT v JONES & LAUGHLIN STEEL CORPORATION

1. CONSTITUTIONAL LAW—LANGUAGE—CONSTRUCTION.

   The factors to be given consideration where determining the meaning of constitutional language are: (1) What is the plain and simple language of the section?; and (2) How have the courts interpreted the language?

2. TAXATION—TAX TRIBUNAL ACT—STATUTES—EFFECT ON OTHER STATUTES.

   The Tax Tribunal Act is an act complete within itself and its enactment does not require reenactment or republication of those portions of the General Property Tax Act affected by the Tax Tribunal Act (MCLA 205.701 *et seq.;* MSA 7.650[1] *et seq.).*

3. CONSTITUTIONAL LAW—STATUTES—AMENDMENT BY IMPLICATION.

   The Michigan Constitution does not require reenactment and republication of statutes which are amended by implication upon enactment of statutes having an effect on the prior legislation (Const 1963, art 4, § 25).

4. TAXATION—TAX TRIBUNAL—JURISDICTION—STATUTES.

   The Tax Tribunal has exclusive and original jurisdiction to review assessments, valuation, rates, special assessments, allocation disputes, and equalization under the property tax laws, and jurisdiction over actions which were previously reviewable by the State Tax Commission or by a circuit court (MCLA 205.731, 205.741; MSA 7.650[31], 7.650[41]).

5. TAXATION—ASSESSMENTS—PETITION FOR REVIEW—TAX TRIBUNAL—JURISDICTION—STATUTES.

   A petition by a municipality requesting an increase in a corporation's personal property tax assessment, after the original assessment has been approved by the municipality's board of review, is in effect a petition for review of the assessment and

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law §§ 58, 70, 75.
[2, 3] 73 Am Jur 2d, Statutes §§ 138, 139.
[4] 72 Am Jur 2d, State and Local Taxation § 787.
[5] 72 Am Jur 2d, State and Local Taxation § 820.

is within the exclusive jurisdiction of the Tax Tribunal (MCLA 205.731; MSA 7.650[31]).

Appeal from Tax Tribunal. Submitted April 22, 1977, at Detroit. (Docket No. 27501.) Decided August 22, 1977. Leave to appeal applied for.

The City of Detroit filed a petition with the Michigan Tax Tribunal requesting an increase in the city's personal property tax assessment of Jones & Laughlin Steel Corporation. Jones & Laughlin moved to dismiss the petition. Motion denied. Jones & Laughlin sought leave to appeal, which was denied. Application for leave to appeal was made to the Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded to the Court of Appeals for consideration as on leave granted, 397 Mich 835 (1976). On such consideration, the Tax Tribunal's denial of the motion to dismiss is affirmed.

*Kermit G. Bailer,* Corporation Counsel, *Victor G. Marrocco* and *Carl Rashid, Jr.,* Assistants Corporation Counsel, for plaintiff.

*Butzel, Long, Gust, Klein & VanZile* (by *Lawrence R. VanTil),* for defendant.

Before: V. J. BRENNAN, P. J., and D. F. WALSH and J. N. O'BRIEN,* JJ.

J. N. O'BRIEN, J. Appellant, Jones & Laughlin Steel Corporation, timely filed its 1975 personal property statement with the City of Detroit's Finance Department, Assessments Division, on February 17, 1975. The personal property statement appellant filed listed its personal property and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

reported appellant's opinion as to its value. Pursuant to the provisions of the General Property Tax Act, 1893 PA 206, as amended, MCLA 211.1 *et seq.;* MSA 7.1 *et seq.,* appellee, City of Detroit's Board of Assessors, then assessed appellant's personal property and the Common Council Board of Review examined and approved the assessment rolls. Appellee assessed appellant's personal property at $1,687,200. Upon examination and approval by the Board of Review the assessment became final, absent an appeal or a general review of appellee's assessments by the State Tax Commission, neither of which occurred.

After the assessment rolls were completed appellee's Assessments Division decided to conduct an audit of appellant's books and records. The audit resulted in a disagreement as to the true cash value of appellant's inventory. The disagreement centers on whether depreciation is an element of inventory costs.

The City of Detroit, on December 9, 1975, then filed a petition with the Tax Tribunal requesting an increase in appellant's personal property assessment by $20,160. Appellant filed a motion to dismiss on the ground that the Tax Tribunal had no jurisdiction to consider the petition and that jurisdiction to consider increases in assessments under the General Property Tax Act was an administrative matter which remained vested in the State Tax Commission and was not transferred to the Tax Tribunal by the Tax Tribunal Act. The motion to dismiss was denied by the Tax Tribunal on January 15, 1976.

Appellant filed an application for leave to appeal with this Court, which was denied by an order entered on April 20, 1976. Appellant thereafter filed an application for leave to appeal with the

Supreme Court which remanded the case to this Court "for consideration as on leave granted". 397 Mich 835 (1976).

The first issue raised in this appeal is: Does the Tax Tribunal Act, 1973 PA 186, violate Const 1963, art 4, § 25 by altering existing laws without republishing them?

It is the defendant's position that art 4, § 25 was designed to give the public notice of how and whether a newly enacted statute amends or repeals prior law.

The plaintiff argues that defendant has no standing to raise the issue as there has been no adverse effect on defendant by the invocation of the Tax Tribunal Act.

Turning to the merits, Const 1963, art 4, § 25 provides that:

"No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length."

This constitutional provision has previously been the subject of Supreme Court scrutiny. In *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 469–470; 208 NW2d 469 (1973), the Supreme Court noted after examining the 1963 and 1850 Constitutions:

"Except for some punctuation and some rearrangement of words in the latter half of the provision, this language has continued through to this date (also see 1908 Const, art 5, §§ 21, 22)."

The Supreme Court then set forth the procedure to be followed in examining constitutional provisions with specific application to art 4, § 25:

"The first consideration given to determining the meaning of constitutional language simply should be to read it. It is especially important that we do so in this matter before the Court because interpretations over the years seem to be leading away from the 'plain and simple language' of the section.

"The language of § 25 is quite clear. It says succinctly and straightforwardly that no law (meaning statutory enactment) shall be revised, altered or amended by reference to its title only. The constitutional language then proceeds to state how it shall be done (i.e., the section[s] of the act in question shall be amended by reenacting and republishing at length).

"There are only two sentences in § 25. Although the second word is 'law', it is obvious from the reading of the entire section that 'law' means act or section of an act. Section 25 is worded to prevent the revising, altering or amending of an act by merely referring to the title of the act and printing the amendatory language then under consideration. If such a revision, alteration or amendment were allowed, the public and the Legislature would not be given notice and would not be able to observe readily the extent and effect of such revision, alteration or amendment." 389 Mich at 470.

An examination of the Tax Tribunal Act, 1973 PA 186; MCLA 205.701 *et seq.;* MSA 7.650(1) *et seq.,* shows that no law was revised, altered, or amended merely by title. No other law was mentioned in the act. However, the inquiry cannot stop there.

In the advisory opinion, the Supreme Court went on to state:

"A second consideration in determining the meaning of constitutional language is the analysis of precedent. How have the courts interpreted this language? In pursuing precedent, those cases decided at a time proximate to the ratification of the constitution are important in that they better reflect the meaning of the language of the constitution at the time it was written." 389 Mich at 470.

The Supreme Court's discussion of precedent and its application to the "no-fault" law are particularly instructive in light of appellant's argument:

"In this instance, the most important source case is *People v Mahaney,* 13 Mich 481 (1865). As noted above, the language of § 25 first appeared in the 1850 Constitution. In *Mahaney,* the Court, speaking through Justice COOLEY, had to resolve several challenges to the enactment of a law 'to establish a police government for the City of Detroit'. (p 490.) The act called for a transfer of duties of various public officials and repealed all inconsistent acts. The legislation was quite broad for it not only instituted a police government but modified 'the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen'. (p 497.)

"Much of Justice COOLEY's discussion in *Mahaney* is particularly pertinent to the present case. An example is this statement found on pp 496, 497:

" 'If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until from the mere immensity of the material, it would be impossible to tell what the law was.'

"From the arguments presented to this Court, it appears that over 200 statutes might be related in some way to 1972 PA 294. It is conceded that there are others related but not even shown on the computer printouts. To hold that each of these possibly hundreds of acts or portions thereof, in addition to the subject act, must be reenacted and republished clearly illustrates the unreasonableness of such an interpretation. To require such a recital would result in the ultimate of confusion.

"Further, the constitutional division of powers mandates that the courts not interfere with legislative action by fabricating standards not constitutionally

required. Considerations of practicality and common sense indicate that the Legislature must be allowed sufficient discretion at this point, provided that such discretion is exercised within constitutional limitations.

"Justice Cooley stated further in *Mahaney:*

" 'This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that the legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws.' (p 497.)

\* \* \*

"To continue the language from *Mahaney* at p 497:

" 'An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was introduced into the law, and the constitution wisely prohibited such legislation.'

"1972 PA 294 does not violate these standards set forth in this reference. It does not revise, alter or amend in such prohibited fashion.

"*Mahaney* then ruled:

" 'But an act complete in itself is not *within the mischief designed to be remedied by this division and cannot be held to be prohibited by it without violating the plain intent.*' (p 497.) (Emphasis added.)

"The subject act details all that is required for institution of a 'no-fault' system of motor vehicle insurance. It is an act complete within itself. It falls squarely within the rule set forth in *Mahaney.*" (Footnotes omitted.) 389 Mich at 471–473.

It is clear that the Tax Tribunal Act is also "an act complete within itself". It provides for the personnel, jurisdiction, functions, practice and pro-

cedure of the tribunal. It sets forth an appeal procedure. It sets up a minor division to handle different types of claims and settles the jurisdiction of pending matters subject to the jurisdiction of the tribunal.

Furthermore, defendant-appellant's argument that up to 83 sections of the General Property Tax Act are affected makes the opinion of the Supreme Court quoted above directly applicable:

"To hold that each of these possibly hundreds of acts or portions thereof, in addition to the subject act, must be reenacted and republished clearly illustrates the unreasonableness of such an interpretation. To require such a recital would result in the ultimate of confusion." 389 Mich at 471–472.

Defendant-appellant relies heavily on *Mok v Detroit Building & Savings Association No 4*, 30 Mich 511 (1875), and *Alan v Wayne County*, 388 Mich 210; 200 NW2d 628 (1972). However, both cases are persuasively distinguished in the Supreme Court's advisory opinion cited above:

"At this juncture, consideration should be given to *Mok v Detroit Building and Savings Association No 4*, 30 Mich 511 (1875). There an 1869 act provided a procedure for incorporating building and savings associations which required reference to an 1855 act. This in turn directed the reader to refer to an 1853 act which dealt with the creation of mining corporations. The 1869 act did alter some of the procedures and requirements of the 1853 act. This scheme was found to violate the constitution.

\* \* \*

"In that case, there were amendments by reference that patently were contrary to the constitution and so are distinguishable from the matter of 1972 PA 294. In the matter before us, there is no attempt to alter or amend the statute by reference or by striking out or

insertion of words without reproduction of the statute in its amended form. (See *Mok,* pp 515–517).

"*Alan v Wayne County,* 388 Mich 210 (1972) also is distinguishable. There the offending statutory language was not an amendment by implication. As Justice WILLIAMS said at p 270:

" 'This is not a case of so-called "amendment by implication" such as cases which were considered and held valid in *People v Mahaney,* 13 Mich 481, 396 (1865) (transfer of powers from one statute to another is not an "amendment" requiring republication); *Underwood v McDuffee,* 15 Mich 361, 366 (1867) (overall revision of statute and system of references adding new sections with the reference number of an old one is permissible where new section is not foreign to subject indicated by title of law in which inserted); *People v Wands,* 23 Mich 384, 388–389 (1871) (an amending act which properly amends two sections of law may have the effect of amending by implication other parts of the same body of law); *Swartwout v Mich Airline R Co,* 24 Mich 388, 399 (1872) (following *Wands* in holding that a new statute which adds a new section to a body of law may amend by implication other sections of the same body of law); and a continuing line of cases not cited here.'

"In speaking of *Mok,* Justice WILLIAMS also said:

" 'The Court noted that it was confusing to be sent by the act of 1869 to the act of 1855 only to be told to turn to the act of 1853 * * *.' " 389 Mich at 475–476.

The conclusion of the Michigan Supreme Court in its advisory opinion, *Constitutionality of 1972 PA 294, supra,* at 477 serves equally well in this case:

"Amendments by implication are an inevitable by-product of the legislative scheme of government. It boggles the mind to contemplate the laws which would be rendered unconstitutional *ab initio* and the avalanche of litigation which would follow were we to construe § 25 in so extended a manner as to find unconstitutional its effect upon 1972 PA 294."

As this Court explained in *Saginaw County v State Tax Commission,* 54 Mich App 160, 165–166; 220 NW2d 706 (1974):

"In view of the time limitation on reorganization by statute, we cannot presume that the framers intended that all the compiled laws effected should be re-enacted and republished at length in the process. 'The Constitution is a practical instrument', as Justice Catron remarked about its Federal brother, 'made by practical men * * * '. A contrary holding would bring the wheels of government screeching to a halt and would produce a situation where, 'from mere immensity of material, it would be impossible to tell what the law was'." (Footnotes omitted.)

The second issue raised by the defendant-appellant is: Does the Michigan Tax Tribunal have jurisdiction over property tax administrative matters?

In this regard the defendant argues that even if the act is not found to violate Const. 1963, art 4, § 25, the Tax Tribunal nevertheless has no jurisdiction of matters arising under either § 22 or § 154 of the General Property Tax Act, MCLA 211.22; MSA 7.22 and MCLA 211.154; MSA 7.211.

These sections are part of the purely administrative provisions of the General Property Tax Act and enable the State Tax Commission to assert the general supervisory powers given it in § 150, MCLA 211.150; MSA 7.208.

By its assertion of jurisdiction over the City of Detroit's petition in this case, the Tax Tribunal has assumed that it is the successor to the jurisdiction of all courts and agencies in all tax matters—regardless of whether the proceeding is administrative or appellate. The defendant claims that this assertion of jurisdiction is not supported by

the Supreme Court's recent decision in *Emmet County v State Tax Commission,* 397 Mich 550; 244 NW2d 909 (1976). *In Emmet County* the Supreme Court was faced with the question whether the Tax Tribunal had jurisdiction over inter-county equalization matters. It held that the Tax Tribunal did not.

Appellee's petition requests an increase in an assessment after the assessment rolls were finalized by the Board of Review—it is not an appeal from the Board of Review. Consequently, the Tax Tribunal can have no jurisdiction over the petition.

However, this Court notes that one of the sections of the Tax Tribunal Act, MCLA 205.731; MSA 7.650(31), defines the jurisdiction of the Tax Tribunal:

"Sec. 31. The tribunal's exclusive and original jurisdiction shall be:

"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.

"(b) A proceeding for refund or redetermination of a tax under the property tax laws."

The exclusiveness of the tribunal's jurisdiction is further spelled out in MCLA 205.741; MSA 7.650(41):

"Sec. 41. A person or legal entity which, immediately before the effective date of this act, was entitled to proceed before the state tax commission or circuit court of this state for determination of a matter subject to the tribunal's jurisdiction, as provided in section 31, shall proceed only before the tribunal."

As observed by appellant, the Supreme Court had the opportunity to construe those two sections in *Emmet County v State Tax Commission, supra.* The Supreme Court stated:

"On July 1, 1974 the Tax Tribunal was established pursuant to provisions of the Tax Tribunal Act, 1973 PA 186; MCLA 205.701 *et seq.;* MSA 7.650(1) *et seq.* Section 31 of the Tax Tribunal Act, MCLA 205.731; MSA 7.650(31), confers upon the tribunal the exclusive and original jurisdiction to review assessment, valuation, rates, special assessments, allocation disputes, and, *inter alia,* equalization, under property tax laws. Section 41 of the same act, MCLA 205.741; MSA 7.650(41), endows the tribunal with jurisdiction over actions which were heretofore reviewable by the State Tax Commission or by a circuit court." 397 Mich at 553–554.

The Supreme Court concluded that "the Tax Tribunal now stands in the stead of the tax commission as a reviewing body", explaining:

"In § 41 of the Tax Tribunal Act, the Legislature made it clear that it was vesting jurisdiction in the Tax Tribunal over matters previously heard by the State Tax Commission as an *appellate* body. Formerly, the State Tax Commission was the appellate body over individual assessments, allocation disputes and *intracounty equalization matters.* The State Tax Commission did not act as an appellate body over *state* equalization. Section 41 does not limit the jurisdiction of the tribunal as conferred by § 31, but is in fact entirely consistent with § 31. Section 31 places jurisdiction in the Tax Tribunal over those matters arising under the property tax laws and, consistent therewith, § 41 eliminates the tax commission and the circuit court as forums in which those very matters were formerly litigated." 397 Mich at 555. (Emphasis in original.)

There is no dispute in this case that appellee's petition arose out of MCLA 211.154; MSA 7.211,

which sets out the procedure for assessing property omitted from the tax roll. The reason a petition is necessary is because the Board of Review had already approved the earlier assessment, and, as pointed out by MCLA 211.31; MSA 7.31:

"Sec. 31. Upon the completion of said roll and its endorsement in manner aforesaid, the same shall be conclusively presumed by all courts and tribunals to be valid, and shall not be set aside except for causes hereinafter mentioned. The omission of such indorsement shall not affect the validity of such roll."

Thus, the petition was for a review of the assessment, properly cognizable under MCLA 205.731; MSA 7.650(31), by the tribunal. Thus, the Tax Tribunal has jurisdiction over the matter.

In *Mohawk Data Sciences Corp v Detroit,* 63 Mich App 102; 234 NW2d 420 (1975), also cited by appellant, this Court pointed out that (prior to the passage of the Tax Tribunal Act) the two methods of attacking a property tax assessment were by a suit in circuit court or review by the State Tax Commission. Under MCLA 205.741; MSA 7.650(41), those methods have been replaced by one remedy, to be pursued before the Tax Tribunal. Therefore, not only does the Tax Tribunal have jurisdiction in this matter but it has exclusive jurisdiction. Appellant's argument cannot be sustained.

Affirmed.