MIDLAND TOWNSHIP v STATE BOUNDARY COMMISSION
MIDLAND TOWNSHIP v MIDLAND COUNTY BOARD OF
COMMISSIONERS

1. STATUTES—MUNICIPAL CORPORATIONS—ANNEXATION—HOME RULE
   CITIES ACT—STATE BOUNDARY COMMISSION—CONSTITUTIONAL
   LAW—TITLE-OBJECT CLAUSE.
   1970 PA 219, an act to amend the home rule cities act in the area
   of annexation and to confer annexation authority on the State
   Boundary Commission, violates the title-object clause of the
   constitution because the jurisdiction of the State Boundary
   Commission is outside the titles of both 1970 PA 219 and the
   home rule cities act (Const 1963, art 4, § 24, MCLA 117.1 *et
   seq.*).

2. STATUTES—AMENDMENT—TITLE—INCORPORATION BY REFERENCE—
   CONSTITUTIONAL LAW.
   No law shall be revised, altered, or amended by reference to its
   title only; the section or sections of the act altered or amended
   shall be reenacted and published at length; however, one act
   may incorporate another by reference if the latter act is not
   changed (Const 1963, art 4, § 25).

3. STATUTES—STATE BOUNDARY COMMISSION ACT—HOME RULE CITIES
   ACT—AMENDMENT—REENACTMENT—CONSTITUTIONAL LAW.
   An act to amend the home rule cities act in the area of annexa-
   tion and to confer annexation authority on the State Boundary
   Commission is unconstitutional because it amends the provi-
   sions and jurisdiction of the state boundary commission act
   without reenacting or republishing those provisions (Const
   1963, art 4, § 25, 1970 PA 219, MCLA 117.1 *et seq.,* 123.1001 *et
   seq.*).

4. STATUTES—STATE BOUNDARY COMMISSION ACT—CRITERIA—IM-
   PROPER DELEGATION—LEGISLATIVE AUTHORITY.
   The state boundary commission act contains sufficient criteria for
   guiding the State Boundary Commission and does not contain

REFERENCE FOR POINTS IN HEADNOTES

[1–17] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 50–80, 137.

an improper delegation of legislative authority (1968 PA 191; MCLA 123.1001 *et seq.).*

5. MUNICIPAL CORPORATIONS—HOME RULE CITIES ACT—ANNEXATION —CONSTITUTIONAL LAW—EQUAL PROTECTION.

A provision of the home rule cities act which grants the right to vote by way of referendum where a territory to be annexed has more than 100 persons and denies that right where the territory has 100 persons or less is based upon a considered pragmatism, is not constitutionally suspect, and does not violate the equal protection clause; however, this constitutional question is not a valid issue in an annexation dispute in which no persons reside in the territory to be annexed (MCLA 117.9[4]).

6. ADMINISTRATIVE LAW—RULES OF PROCEDURE—STATE BOUNDARY COMMISSION—MUNICIPAL CORPORATIONS—ANNEXATION.

A plaintiff's motion for summary judgment based on the State Boundary Commission's failure to promulgate rules governing its own proceedings, in an action to review the commission's approval of a proposed annexation, was properly denied in the absence of a showing of prejudice.

7. ADMINISTRATIVE LAW—ADMINISTRATIVE PROCEDURES ACT—STATE BOUNDARY COMMISSION—MUNICIPAL CORPORATIONS—ANNEXATION.

A plaintiff's motion for summary judgment based on the State Boundary Commission's failure to follow the contested case provisions of the Administrative Procedures Act, in an action to review the commission's approval of a proposed annexation, was properly denied where no prejudice is shown.

8. ADMINISTRATIVE LAW—STATE BOUNDARY COMMISSION—HEARINGS —STATUTES—PUBLIC RECORD.

The deliberative sessions of the State Boundary Commission are not required by statute to be made part of the public record; a state administrative agency speaks through its enunciated orders encompassing findings of fact and law based upon the evidence educed at a public hearing (1968 PA 261; MCLA 15.251 *et seq.).*

9. MUNICIPAL CORPORATIONS—ANNEXATION—HOME RULE CITIES ACT —COUNTIES—COUNTY COMMISSIONERS—STATE BOUNDARY COMMISSION—JURISDICTION.

County boards of commissioners continue to have jurisdiction over annexation of territory to home rule cities where 1970 PA 219, an amendment to the home rule cities act giving exclusive jurisdiction over annexation to the State Boundary Commis-

sion, is unconstitutional, and where 1972 PA 362, another amendment to the home rule cities act, did not give exclusive jurisdiction over annexation to the State Boundary Commission (1909 PA 279; MCLA 117.1 *et seq.*).

10. STATUTES—HOME RULE CITIES ACT—ANNEXATION—MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW.

A section of the home rule cities act, which for annexation of a township territory to a city of more than 15,000 people requires the approval of both the electors of the territory to be annexed and the combined vote of the electors of the city and the balance of the township, is not unconstitutional.

11. MUNICIPAL CORPORATIONS—ALTERATION—ELECTIONS—RIGHT TO REFERENDUM.

Municipalities are creatures of the Legislature and may be altered or done away with at the pleasure of the Legislature with or without a referendum right in the public involved.

12. MUNICIPAL CORPORATIONS—ANNEXATIONS—GERRYMANDERING.

Gerrymandering is not evident in a petition for annexation where the irregularities in the boundary shape of the territory to be annexed are not patently unreasonable, they result in reasonable compactness and regularity of boundaries, and they do not produce any obvious lack of continuity.

13. MUNICIPAL CORPORATIONS—ANNEXATION—BOUNDARIES—RIVERS.

An annexation petition which set the center line of a river as a boundary of a parcel of land to be annexed to a city was not defective because the boundary is indefinite and may vary, where the center line of the river was also a city boundary and the use of the existing city boundary for the parcel would eliminate voids and enclosures; sovereign states frequently use rivers as boundaries.

14. COUNTIES—COMMISSIONERS—JURISDICTION—ANNEXATION PETITION —DELAY.

A county board of commissioners could exercise jurisdiction over an annexation petition in 1973, although the petition was originally submitted in February, 1968, where the delay was not unreasonable or inordinate.

15. COUNTIES—COUNTY COMMISSIONERS—ANNEXATION PETITION—DELAY—CONTINUED VALIDITY.

A county board of commissioners could exercise jurisdiction over a five-year-old annexation petition where the petition was proper when it was filed; the commissioners are not obliged to

go over the status of the petition to determine who is still living in the relevant area; it is not necessary to continually demonstrate that the facts continue to be the same as when the petition was filed.

16. ELECTIONS—ELECTION SCHEDULING COMMITTEE—ANNEXATION REFERENDUM—STATUTES.

A special annexation referendum called by a county board of commissioners was valid, although the proposed date of the election was not referred to and approved by the county election scheduling committee as required by statute, where it could be concluded that the committee had no objection to the election date, the election was otherwise properly conducted, there was no showing that any voter was prejudiced or misled, and there was no showing that the result was affected or changed (MCLA 168.639).

17. MUNICIPAL CORPORATIONS—ANNEXATION—ELECTIONS—COUNTY COMMISSIONERS—LEGISLATIVE FUNCTION—APPEAL AND ERROR—CONSTITUTIONAL LAW.

The action of a board of county commissioners in calling for an election for a proposed annexation is a legislative function and is not subject to the constitutional provision governing review of judicial or quasi-judicial proceedings; it is presumed that there is a proper basis for the commissioners' action (Const 1963, art 6, § 21, MCLA 117.8).

Appeals from Ingham and Midland, Donald L. Reisig and John X. Theiler, JJ. Submitted April 11, 1975, at Lansing. (Docket Nos. 19154–19156, 20255.) Decided October 13, 1975. Leave to appeal applied for.

Complaint by the Township of Midland and Robert B. Chatterton, individually and as township supervisor, against the State Boundary Commission to set aside the commission's approval of two petitions to annex township land to the City of Midland. The City of Midland intervened as a defendant. Summary judgment for plaintiffs was granted, a statute giving the State Boundary Commission jurisdiction over annexation was found unconstitutional, and the petitions were returned

to the Midland County Board of Commissioners. All parties appeal by leave granted. Affirmed.

Complaint by the Township of Midland and Robert B. Chatterton against the Midland County Board of Commissioners and others to restrain an annexation election called for by the board of commissioners. The relief was denied and the complaint was amended to quo warranto to test the validity of the annexation election. The City of Midland intervened as a defendant. Judgment for defendants, upholding the validity of the election. Plaintiffs appeal. Affirmed.

*Bauckham, Reed, Lang & Schaefer* and *William D. Sinclair,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Frank J. Pipp,* and *Louis J. Porter,* Assistants Attorney General, for the State Boundary Commission.

*David S. DeWitt,* City Attorney *(Morris & Culver, P. C.,* of counsel), for the City of Midland.

*Edward G. Durance,* for the Midland County Board of Commissioners.

Before: V. J. BRENNAN, P. J., and D. E. HOLBROOK and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, J. Three of the four appeals involve the same case, heard in the Circuit Court for the County of Ingham. The plaintiffs-appellees and both defendants-appellants were granted leave to appeal by our Court, each claiming that the trial court committed error in one or more of its rulings on the issues presented therein.

The instant case involves two petitions for annexation to the City of Midland. 71-AT-7 was a petition for annexation of 319 acres of the Township of Midland into the City of Midland, and was filed with the County Board of Commissioners on February 15, 1968, and was transferred to the State Boundary Commission (SBC) on April 28, 1971, pursuant to 1970 PA 219. These 319 acres were contiguous to the City of Midland, and the site for a nuclear energy plant. 71-AR-11 was a petition to annex the remainder of the Township of Midland into the City of Midland, and was filed with the SBC May 6, 1971 under the same 1970 PA 219. Both petitions were approved by the SBC.

The Circuit Court for Ingham County granted a motion for summary judgment brought by plaintiffs, claiming that 1970 PA 219 was unconstitutional. Both defendants-appellants appeal from the summary judgment, and plaintiffs appeal claiming that the said statute is deficient for other reasons as claimed by plaintiffs in their motion for summary judgment, but which were rejected by the trial court. The trial judge in ruling on the matter wrote a very thorough opinion, which we deem advisable to set forth in full herein, *viz.:*

"This matter is submitted to the court on briefs and after oral argument on plaintiffs' motion for summary judgment. In their motion and brief, plaintiffs raise essentially eight issues upon which it claims the court can grant the relief sought. The court will address these issues in the order presented by the parties.

"I

"Was the procedure followed by the Legislature in enacting Act 219 of 1970 violative of Article IV, Secs 24 and 25, of the Michigan Constitution of 1963?

"In order to understand this issue, some historical

reference is necessary. Prior to 1968, procedures for the incorporation of cities and the annexation of territory thereto were governed by various provisions contained within 1909 PA 279 (the Home Rule Act), CL 117.01 *et seq.,* particularly by Sections 6, 7, 8 and 9 thereof, variously added to the Home Rule Act, and amended by 1951 PA 40; 1953 PA 173; 1955 PA 33; 1956 PA 77; 1957 PA 210; 1951 PA 58; and 1956 PA 68. However, in 1968, by the terms of 1968 PA 191, effective November 15, 1968, the Legislature passed the State Boundary Commission Act wherein they created a State Boundary Commission having responsibility, at that time, solely over proposed municipal incorporation. In turn, the State Boundary Commission Act (1968 PA 191) was not directly amended granting the State Boundary Commission authority over annexation petitions or resolutions until 1972 PA 362 effective January 9, 1973, well after the completion of the proceedings herein complained of. However, the Legislature did, by 1970 PA 219 effective April 1, 1971, amend the Home Rule Cities Act (1909 PA 279) and specifically Section 9 thereof, by adding, *inter alia,* the following language to Section 9 of 1909 PA 279:

" '(1) In the event of a conflict between the provisions of this act and Act No. 191 of the Public Acts of 1968, being sections 123.1001 to 123.1020 of the Compiled Laws of 1948, regarding an incorporation or consolidation, the provisions of Act No. 191 of the Public Acts of 1968 shall govern * * * .

" '(2) Except as provided in subsections (1) and (8), a petition or resolution for annexation of territory shall be filed in the Lansing office of the state boundary commission. The commission, after determining the validity of the petition or resolution, shall hold a public hearing in or reasonably near the area proposed for annexation. The commission in processing and approving, denying or revising a petition or resolution for annexation shall have the same powers and duties and be in accordance with and subject to the provisions of Act No. 191 of the Public Acts of 1968, relating to petitions which propose incorporations.

" '(4) If an annexation is approved, and if on the date

the petition or resolution was filed 100 persons or less resided in the area approved for annexation, the commission's order shall not be subject to a referendum. The commission shall send a certified copy of its order to the clerk of each county, city, village and township affected and to the secretary of state. The annexation shall be effective on a date set forth in the commission's order.

" '(9) The provisions of section 14 shall not be applicable to an annexation approved by the commission of part of a township or village to a city except in the event of outstanding bonds or other evidences of indebtedness of the township or village. In such event, the commission shall determine and order an equitable division of assets and liabilities which relate to the bonds or other indebtedness.

" '(10) The provisions of sections 8 and 8a shall not be applicable to petitions or resolutions filed with the state boundary commission.

" '(11) On and after the effective date of the 1970 amendments to this section, and so long as Act No. 191 of the Public Acts of 1968 is in effect, annexation of territory from a township or village to a home rule city shall be as provided in this section and no other means of annexation shall be effective.'

"The proposed annexation in dispute in this matter was a purported annexation conducted under the provisions of subsection 4 of Sec 9 of 1909 PA 279, *i.e.,* a commission order not subject to referendum because 100 persons or less resided in the area to be annexed.

"There is no question that the Legislature, by the adoption of 1970 PA 219 amending the provisions of Section 9 of 1909 PA 279, attempted to increase the powers and duties of the State Boundary Commission created by 1968 PA 191, by giving them additional 'supervisory' duties over annexation matters. Plaintiffs thus contend such legislative effort is constitutionally deficient because of the provisions of Const 1963, art 4, § 24, and art 4, § 25, which read as follows:

" '§ 24 No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house

so as to change its original purpose as determined by its total content and not alone by its title.

" '§ 25 No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be reenacted and published at length.'

"In support of their contention, plaintiffs most vigorously put forward the authority of *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972), the famous (or infamous) Detroit Tiger Stadium case, as well as the authority of *Mok v Detroit Building & Savings Association, No. 4,* 30 Mich 511 (1875). Defendants, however, in reply also rely upon *Alan, supra,* and attempt to distinguish the factual situation there from the facts at hand. In light, however, of the broad language of *Alan,* the specific overruling of *Burton v Koch,* 184 Mich 250; 151 NW 48 (1915), therein, and the factors hereafter mentioned, plaintiffs' position, *prior to the 1972 amendment to the Boundary Commission Act,* appears to be the better taken. We are not dealing here with a situation where, because of a special fact situation, two absolutely conflicting statutes are passed, thus requiring a judicial interpretation, but rather, succintly *[sic]* put, we are dealing with a situation where the Legislature sought to do indirectly what it certainly could have done, and later did, directly, *i.e.,* amend the State Boundary Commission Act. By amending the Home Rule Cities Act through adoption of 1970 PA 219 it conferred additional powers upon the State Boundary Commission, *i.e.,* jurisdiction over annexations, it obviated provisions for election in proposed territories for annexation of less than 100 residents, and, *inter alia,* it limited means of annexation to the ways provided in Sec 9, 1909 PA 279. It is at least at this point where Art 4, § 24, *supra,* comes into play, for neither in the title of 1909 PA 279 nor in the title of 1970 PA 219 is the object of the law, to wit, 'annexation,' mentioned. Rather the title reads, 'An act to provide for the incorporation of cities and for revising and amending their charters.' Nor does the title of 1970 PA 219 mention the conferring of additional powers over the subject of annexation on the State Boundary Commission. Rather than confer powers of home rule upon cities, 1970 PA

219 appears to substantially abrogate those powers by conferring heretofore local duties and responsibilities upon a state agency. (See *Underwood v McDuffee,* 15 Mich 361 [1867].)

"Turning now to the question of Art 4, § 25, *i.e.,* whether or not the amendment to 1909 PA 279, adopted by 1970 PA 219, in effect amended 1968 PA 191, and, if so, whether or not it was necessary in order to comply with Art 4, § 25, of the 1963 Constitution to reenact and publish 1968 PA 191 at length, Justice Williams in his majority opinion in *Alan* has laid to rest the reasoning of *Burton v Koch, supra.* Mr. Justice Williams said:

" '*Burton,* on the other hand, stands for the rule that you can amend statute C by putting in statute B for the purpose of amending statute C so long as you make no specific reference to C, merely by publishing statute B under Constitution 1963, Art 4, § 25, but without re-publishing statute C.'

"In our fact situation, however, specific reference was made to 'statute C,' though in fact there are not as many needed 'cross references' as in the *Mok* case. It is clear that direct reference to the State Boundary Commission Act prior to its 1972 amendment would have in no way informed an individual that the State Boundary Commission now had jurisdiction over annexation proceedings, nor would a reference to the title of the Home Rule Cities Act in and of itself put an individual on notice that annexation proceedings were dealt with therein. Only upon close scrutiny of the amendments passed by 1970 PA 219 to Section 9 of the Home Cities Act can reference be found to the authority of the Boundary Commission in the areas of annexation. Mr. Justice Williams in his *Alan* decision at p 281; 200 NW2d p 663, said as follows:

" '*Mok* says the Constitution requires you to do the whole job right. *Burton* says it is good enough to do the job half right. Furthermore, *Burton* says you can avoid the second half of the job of republication if you hide your purpose whereas *Mok* requires the second half of the job of republication even though you disclose your purpose.

" 'This Court is convinced the Constitution is not

satisfied with half way measures and does not prefer dissimulation to straightforwardness. We adopt the rule of *Mok* and overrule *Burton.'*

"The obvious intention of the Legislature to confer new and additional duties and responsibilities upon the State Boundary Commission is apparent by the very thrust of 1970 PA 219. That the job was only half finished after the adoption of 1970 PA 219 is evident by the adoption of 1972 PA 362 in which the State Boundary Commission Act was specifically amended authorizing the Boundary Commission to exercise jurisdiction over matters of annexation of territory to a city. Again, as Mr. Justice Williams said on p 285; 200 NW2d p 665 of *Alan:*

" 'There is nothing complicated, burdensome, unreasonable or obscure about what we say here today. If a bill under consideration is intended, whether directly *or indirectly* to revise, alter or amend the operation of previous statutes, then the Constitution, unless and until appropriately amended, requires that the Legislature do in fact what it intends to do by operation.' (Emphasis added.)

"In conclusion, though recognizing the authority of *Village of Kingsford v Cudlip,* 258 Mich 144; 241 NW 893 (1932), which held that the title of 1909 PA 279, which provided for the incorporation of villages and for revising and amending their charters was sufficient language to sustain provisions for annexation, this court holds that, in light of *Alan v Wayne County,* failure of the Legislature to express the object of the Legislature to deal with the subject of 219 specifically in the title annexation, when taken in conjunction with plaintiffs' arguments concerning Art 4, § 25, *i.e.,* amendment by reference and without reenactment, make the adoption of 1970 PA 219 constitutionally deficient, and plaintiffs' motion for summary judgment is granted on this ground.

"II

"Sufficiency of the criteria in 1968 PA 191 for guidance.

"Though resolution of issue No. I requires the grant-

ing to plaintiffs the relief prayed for, due to the controversy surrounding that issue, and the ever-present possibility of appeal, the court will decide all other issues raised herein.

"Though plaintiff makes a compelling argument with reference to the legislative failure to establish sufficient standards and guidelines within which the State Boundary Commission shall act, this court cannot say that the Legislature totally abrogated its responsibility in this complex area and made an improper delegation of legislative authority to the State Boundary Commission. For years the field of annexation had been fraught with local political evils, including rural-urban in-fighting, unseemly municipal rivalries, and blatant grabs for tax base. Though wide discretion is granted to the State Boundary Commission, that discretion is no longer unbridled. The act contains provisions for judicial review. Plaintiffs' motion for summary judgment on this ground is denied.

"III

"The classification of '100 persons or less' provided in CL 117.9(4) does not rest upon such a difference in situation or circumstances as to constitutionally permit such a division.

"Plaintiffs, though recognizing there is no absolute right to vote on questions of municipal annexation grounded upon a constitutional basis, submit that the granting of the right to vote by way of referendum on territories to be annexed of more than 100 persons and denying it to territories of less than 100 persons is arbitrary and discriminatory and a violation of the equal protection clause. Such a provision appears to this court to be based upon a considered pragmatism and is not in and of itself constitutionally suspect. Plaintiffs' request for summary judgment on this ground is denied.

"IV

"A district designed to exclude objecting voters is a gerrymander, and the Boundary Commission has a duty

to take corrective action or reject a gerrymandered petition.

"Plaintiffs have failed to indicate to the court by way of either law or fact a case for the application of the concept of gerrymandering, either in its pure 'geographical' sense or in a 'political-economic' context. There is no indication upon the referenced record, or for that matter in plaintiffs' brief, that the proposed annexation is so designed as to rob the township of so much of its tax base that it can no longer exist as a political entity. Plaintiffs' contentions that defendant Boundary Commission was obliged to submit the later petition for the annexation of the entire township to the voters is unfounded, and the request for summary judgment on this ground is denied.

## "V

"The failure of the Boundary Commission to promulgate rules as required by the Act and the Administrative Procedures Act.

"Though it is unfathomable to this court how any administrative body can function without lawfully adopted rules governing its own proceedings, plaintiffs have failed to point out to this court how such a failure on the part of the State Boundary Commission has in any way prejudiced them in their presentation of their opposition to said annexation or how such failure adversely affects the decision made by the Boundary Commission. Plaintiffs' motion for summary judgment on this ground is denied.

## "VI

"The proceedings of the Boundary Commission are regulated by the contested case provisions of the Administrative Procedures Act, and failure to follow those provisions requires reversal of the determination.

"Plaintiffs' arguments in this regard all ultimately bear upon the plaintiffs' right to judicial review. Since that right is unquestioned and is presently being exercised, plaintiffs have failed to point out to the court how the agency's purported failure to treat the matter as a contested case in any way affected either the substan-

tive or procedural rights of plaintiff. Plaintiffs' motion for summary judgment on this ground is denied.

### "VII

"The provision of 1968 PA 261 were not observed and such failure renders the Commission findings reversible.

"Plaintiffs contend the Boundary Commission was required by 1968 PA 261 to hold its deliberative session in public. Without any lengthy discourse on the intended purport of 1968 PA 261, it is clear to this court that a state administrative agency speaks through its enunciated orders encompassing findings of fact and law based upon the evidence educed at a public hearing. This court sees no reason why the deliberative give and take of a multi-member tribunal should be made part of the public record, any more so than this individual judge's thought processes while arriving at a decision should be made part of the record. Plaintiffs' motion for summary judgment on this ground is denied.

### "VIII

"That the Commission ignored the criteria of Section 9 and substituted their own criteria for decision.

"This ground raised by plaintiffs really goes to the ultimate merits of the controversy. Since the earlier portion of this opinion makes decision on the merits unnecessary and since plaintiffs have failed to point out where as a matter of law defendant Commission did ignore the criteria of Section 9 and selected their own criteria for decision, plaintiffs' motion for summary judgment on this ground is likewise denied.

### "CONCLUSION

"For the reasons indicated herein, in subheading I, plaintiffs' motion for summary judgment is granted, this court having specifically denied all other grounds raised. An order in conformity with this opinion shall enter within ten days or this opinion shall become the final order of this court." (Emphasis in original.)

A corrected final summary judgment was duly

filed on the ninth day of November 1973 by the Circuit Judge. The said summary judgment is as follows:

"This cause, having come on to be heard upon a Motion for Summary Judgment filed by the plaintiffs therein and oral and written arguments of counsel for the respective parties having been presented to this court and this court being fully advised in the premises, IT IS HEREBY THE FINDINGS AND ORDER of this court as follows:

## "FINDINGS

"1. The procedure followed by the Michigan legislature in enacting 1970 PA 219 is violative of Article IV, Sections 24 and 25, of the Michigan Constitution of 1963 and said Act is accordingly unconstitutional and of no force and effect for the following reasons:

"A. 1970 PA 219 did not include within its title as an object of the law the subject of 'annexation,' in violation of Art IV, Sec 24 of the 1963 Michigan Constitution.

"B. The title of 1970 PA 219 does not mention conferring of additional powers over the subject of annexation on the State Boundary Commission, in further violation of Art IV, Sec 24 of the 1963 Michigan Constitution.

"C. The legislature, in adopting 1970 PA 219, attempted to amend 1968 PA 191 without re-enacting or republishing said latter Act, in violation of Art IV, Sec 25 of the 1963 Michigan Constitution.

"2. Sufficient criteria is contained in 1968 PA 191 to support the delegation of legislative authority to a State Boundary Commission.

"3. The classification of '100 persons or less' provided in 1970 PA 219 is based upon a considered pragmatism and is not, in and of itself, constitutionally suspect.

"4. Plaintiffs have failed to indicate to the court, by way of either law or fact, a case for the application of the concept of gerrymandering, either in its pure 'geographical' sense or in a 'political-economic' context and there is no indication that the proposed annexation would rob the Township of so much of its tax base that

it could no longer exist as a political entity. The Boundary Commission was, accordingly, not obligated to submit the annexation of the entire Township to the voters by way of referendum.

"5. Though it is unfathomable to this court how any administrative body can function without lawfully adopted rules governing its own proceedings, plaintiffs have failed to point out to this court how such a failure has in any way prejudiced plaintiffs in their presentation to the Commission or how such failure adversely affects the decision made by the Boundary Commission.

"6. The claim that the proceedings of the Boundary Commission are regulated by the 'contested case' provisions of the Administrative Procedures Act of the state ultimately bears upon the right of the plaintiffs to judicial review which is presently being exercised and plaintiffs have failed to show how any failure to follow the 'contested case' provisions have affected either the substantive or procedural rights of plaintiffs.

"7. 1968 PA 261 does not require the deliberative give and take of a multi-member tribunal to be made a part of the public record and conducted in public.

"8. Whether or not the Commission ignored the criteria of 1968 PA 191 in making its decision goes to the ultimate merits of the controversy and a decision on such merits is unnecessary as a result of the findings of this court in paragraph 1 hereof. Furthermore, plaintiffs have failed to point out where, as a matter of law, the defendant State Boundary Commission did ignore such criteria in making its decision.

"9. Because the attempt by the legislature to grant exclusive jurisdiction over annexation proceedings by the adoption of 1970 PA 219 was constitutionally deficient and without force and effect as indicated in paragraph 1 of these findings, the decisions of the Michigan State Boundary Commission under Docket Nos. 71-AT-7 and 71-AR-11 are null and void.

### "ORDER

"IT IS ORDERED AND ADJUDGED for the reasons set forth in paragraph 1 of the findings regarding the unconstitutionality of 1970 PA 219, that plaintiffs' Mo-

tion for Summary Judgment be granted and the orders of the State Boundary Commission under Docket Nos. 71-AT-7 and 71-AR-11 and all proceedings provided to be taken pursuant to said orders are hereby permanently enjoined and all proceedings for annexation thereunder are hereby declared null and void and of no force and effect.

"IT IS FURTHER ORDERED that the petitions transferred to the Boundary Commission from the Clerk of the County of Midland and considered by the Boundary Commission under its Docket No. 71-AT-7 are ordered returned by the Secretary of the State Boundary Commission to the Clerk of Midland County, on behalf of the Midland County Board of Commissioners for whatever action is deemed legally appropriate."

We review the issues raised and passed upon by the trial court in proper order.

## IA

*Is 1970 PA 219 unconstitutional because it violates the proscription of Const 1963, art 4, § 24, in that it purports to change the jurisdiction of the SBC which is outside of the title of said Act 219, and the title of the home rule cities act?*

Const 1963, art 4, § 24, provides:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

The purpose of Const 1963, art 4, § 24, is to avoid the Legislature passing laws not fully understood by them and by the public, and to notify them of the design of the statutory change. *Maki v East Tawas*, 385 Mich 151; 188 NW2d 593 (1971).

The issue presented is whether 1970 PA 219,

amending the home rule cities act[1] (hereinafter referred to as HRCA) in the area of annexation, may also encompass a grant of authority to the SBC, a state agency, the jurisdiction of which is clearly outside of the title of the HRCA. The question is not, as appellants assert, whether the HRCA title is sufficiently broad enough to include the object of the HRCA governing annexation. *Village of Kingsford v Cudlip,* 258 Mich 144; 241 NW 893 (1932), and *Hall v Calhoun County Bd of Supervisors,* 373 Mich 642; 130 NW2d 414 (1964). The question instead is whether the HRCA title is sufficiently broad to include the object of changing and increasing the jurisdiction of the SBC over annexation.

Here, the act in question had two purposes—to withdraw certain annexation authority from the home rule cities and to confer annexation authority on the SBC. The first purpose was obvious in the title, but the second purpose was anything but obvious. The Legislature and the public should understand from the title that only provisions germane to the reasonable object of the title are being amended. *Blades v Bd of Water Commissioners of Detroit,* 122 Mich 366; 81 NW 271 (1899), and *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 466; 208 NW2d 469, 474 (1973). Those interested in the authority and jurisdiction of the SBC could hardly be expected to realize that a change was being made therein in another act whose title has to do with home rule cities.

It was inappropriate to find the provisions of Act 219 within the title of HRCA. It being inappropriate to find such provisions in the HRCA, then we observe that the public and the Legislature were

---

[1] MCLA 117.1 *et seq.;* MSA 5.2071 *et seq.*

not clearly informed and aware of the intention and context of this legislation. We conclude that the trial court was correct in deciding that the title of the HRCA is sufficient to encompass the annexation authority of cities, but is not authority for the conclusion that the title of the HRCA and Act 219 are sufficient to encompass the subject of the annexation jurisdiction of an entirely separate state agency. *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972). We rule that 1970 PA 219 is unconstitutional as violating Const 1963, art 4, § 24.

## IB

*Is 1970 PA 219 unconstitutional for the reason that it is in violation of Const 1963, art 4, § 25, in that its purpose is to amend the provisions and jurisdiction of the state boundary commission act[2] (hereinafter referred to as SBCA) without reenacting and republishing that act?*

Const 1963, art 4, § 25 provides: "No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length." Appellants assert that it was unnecessary to reenact and republish the SBCA because 1970 PA 219 did not amend the SBCA in any way. *Wayne County Prosecuting Attorney v Wayne County Bd of Commissioners,* 44 Mich App 144; 205 NW2d 27 (1972). Further, that as explained by Justice Cooley in *People v Mahaney,* 13 Mich 481 (1865), a literal application of the constitutional provision is not warranted, and one act may incorporate another by reference if the latter act is not changed. *Alan, supra,* at 274; 200 NW2d 659, and

---

[2] MCLA 123.1001 *et seq.;* MSA 5.2242(1) et seq.

*Clay v Penoyer Creek Improvement Co,* 34 Mich 204 (1876).

Appellees, Township of Midland and Mr. Chatterton, claim that certain exceptions which have grown to surround the literal application of Const 1963, art 4, § 25 are no longer applicable where inconsistent with the principles enunciated in *Alan,* at 270–271; 200 NW2d at 657. In *Mok v Detroit Building & Savings Association No 4,* 30 Mich 511 (1875), the statute did more than merely reenact or adopt the other statute, it made changes, leaving the parties to fit them together as best they could. *Mok,* at 521–522, 529, quoted in *Alan,* at 272–273; 200 NW2d at 658–659. Further, 1970 PA 219 attempts to duplicate 1968 PA 191 (SBCA), but makes changes also in jurisdiction which renders the SBCA not complete within itself, creates exceptions to the jurisdictional grant and establishes certain procedures to be followed by the SBC which requires putting the two acts together and figuring out as best as one can what has been amended and what has not. They further assert that the specific words of Act 219 recognize this because it states in sub-section (1):

"In the event of a conflict between the provisions of this act and Act No. 191 of the Public Acts of 1968 [SBCA] * * * the provisions of Act No. 191 * * * shall govern."

Plaintiffs also assert that in addition to violating the plain words of the constitution, and violating the principles established in the cases of *Alan* and *Mok,* the enactment of 1970 PA 219 also violated the underlying purpose of that provision—by purporting to amend the HRCA while in fact amending the SBCA. The passage of Act 219 evidences precisely the deception that leads to the type of

legislative inadvertence resulting in confusion that is the mischief designed to be prevented.

Appellants' argument that not one word of the SBCA was amended is disingenuous. Act 219 clearly assigned additional functions, duties and procedures to the SBC. It is not material whether an act purports to amend another, but instead the question is whether in fact it alters or amends the other act. Dissent of Justice Potter in *People v Stimer,* 248 Mich 272, 282, 294; 226 NW 899, 902, 906 (1929), adopted in *Alan,* at 278; 200 NW2d 661. In order to learn of the SBC's jurisdiction and procedure in annexation cases, one must read an entirely different statute which is not even referred to in the SBCA. Not only can confusion result, but confusion has resulted. Indeed, if one wished to know the jurisdiction of the SBC over annexation, and looked at the SBCA, one would find not only no sections concerning annexation, but additionally that annexation is not even in the title of the act.

We rule that the Legislature has unconstitutionally attempted to amend SBCA (statute C) by putting in the HRCA (statute B) specific words to amend the SBCA (statute C) without republishing or reenacting the SBCA (statute C) contrary to *Mok* and *Alan.* The enactment of 1970 PA 219 was dissimilation rather than straightforwardness. The trial court correctly ruled on issue 1B and we refer to the trial court's opinion on the issue.

As to additional issues raised in the trial court and decided therein, we consider and determine them in the following manner.

## II

*Sufficiency of the criteria in 1968 PA 191 for guidance.*

We adopt the ruling and reasoning of the trial court in its opinion on this issue. We note the finding that there was no showing of prejudice resulting to the plaintiffs.

### III

*The classification of "100 persons or less" provided in MCLA 117.9(4); MSA 5.2088(4), does not rest upon such a difference in situations or circumstances as to constitutionally permit such a division.*

We rule that there is no valid issue here because in the instant petition concerning the 319 acres— there were no persons residing thereon. Under the former law or Act 219, which we determine to be unconstitutional, the rule governing the election would be the same. We also adopt the reasoning and ruling of the trial court on this issue.

### IV

*A district designed to exclude objecting voters is a gerrymander, and the SBC has a duty to take corrective action or to reject a gerrymandered petition.*

We reject the argument and claims of the plaintiffs and adopt the reasoning and ruling by the trial court on this issue.

### V

*The failure of the SBC to promulgate rules as required by the act and the Administrative Procedures Act.*

We agree with the trial court that it would have been much better if the SBC had adopted rules and published them. In the absence of a showing

of prejudice by plaintiffs, we agree with the trial court in its reasoning and ruling on this issue.

## VI

*The proceedings of the SBC are regulated by the contested case provisions of the Administrative Procedures Act, and failure to follow those provisions requires reversal of the determination.*

The trial court ruled that there was no showing of prejudice resulting from the manner in which the proceedings were conducted by the SBC, and therefore no reversible error was present. We agree.

## VII

*The provisions of 1968 PA 261 were not observed and such failure renders the SBC findings reversible.*

We rule that the trial court's reasoning and ruling on this issue was correct.

## VIII

*That the SBC ignored the criteria of section 9 (of the SBCA) and substituted their own criteria for decision.*

We adopt the reasoning and ruling of the trial court as contained in its opinion stated herein, concluding that it correctly disposes of the issue.

The decisions of the Ingham County Circuit Court are affirmed. No costs, a public question being involved.

\* \* \*

The fourth appeal has been consolidated with the three previously considered appeals from the

Ingham County Circuit Court, and is hereinafter considered and determined. The instant appeal involves the actions taken subsequent to the summary judgment order of the Ingham County Circuit Court, returning the petition for annexation of the 319-acre parcel of land from the Township of Midland to the City of Midland to the Clerk of the Midland County Board of Commissioners, for whatever action is deemed legally appropriate.

Upon the return of the petition originally filed with the Midland County Clerk on February 15, 1968, concerning the annexation of the 319 acres, the petition came to the attention of the Midland County Board of Commissioners, and by a vote of 7 to 6 on November 20, 1973, it was approved and the commissioners called an election thereon in the City of Midland and the Township of Midland for February 5, 1974.

Plaintiffs, Township of Midland and Robert Chatterton, individually and as Supervisor of the Township of Midland, commenced the instant action in the Midland County Circuit Court on December 20, 1973, against the Midland County Board of Commissioners, et al, for injunctive relief restraining the election for the annexation of the subject 319 acres set for February 5, 1974. Injunctive relief was denied by the court, and plaintiffs then requested of the court to transfer the action to one of quo warranto. This was granted, and the City of Midland was permitted to intervene as a party defendant.

On March 8, 1974, plaintiffs filed a motion for summary judgment under GCR 1963, 117, upon the grounds that there was no genuine issue as to any material fact.

Plaintiffs set forth in their brief a statement of facts, which is restated in full as follows:

"1. On February 15, *1968,* petitions for annexation of approximately 319 acres as described in the Trial Exhibit A from Midland Township to the City of Midland were filed with the Board of Commissioners of Midland County bearing signatures which were subsequently, on November 20, *1973,* determined by the resolution of the Board of Commissioners of Midland County to satisfy the requirements of Section 6 of the Home Rule Act (1909 PA 279), Section 5.2085 MSA.

"2. No action was taken by the Board of Commissioners with respect to these petitions by reason of its uncertainty concerning a petition for incorporation of the City of Bullock Creek and subsequent litigation commenced by the City of Midland to require the Board to reject this incorporation petition.

"3. On March 16, 1971, the Board of Commissioners, by resolution, decided the incorporation petition did not meet the requirements of the Home Rule Act.

"4. Effective April 1, 1971, 1970 PA 219 amended Section 9 of the Home Rule Cities Act to provide that petitions or resolutions proposing annexation would be filed with the State Boundary Commission and would be processed by the Commission in accordance with procedures provided for in said amended section.

"5. Section 2 of the 1970 amendment to the Home Rule Act provided:

" 'The amendments enacted by this 1970 amendatory act are remedial and shall apply with respect to a petition for annexation filed with the clerk of a county board of commissioners * * * on which an election has not been ordered * * * before the effective date of this act as well as on and after such date.'

"6. On April 28, 1971, the County Clerk of Midland County transferred the annexation petition referred to in paragraph 1 to the State Boundary Commission pursuant to the provisions of Section 2 of the amendatory act.

"7. On May 6, 1971, a resolution of the City Council of the City of Midland was filed with the State Boundary Commission asking for the annexation of the remaining unincorporated portions of Midland Township

with the exception of that requested in the petition transferred by the County Clerk.

"8. On September 28, 1971, the Circuit Court for the County of Midland entered a Judgment approving the Board of Commissioners' refusal to hold an election in connection with the proposed incorporation of the City of Bullock Creek.

"9. The two pending annexation proceedings were processed separately by the Boundary Commission and separate decisions approving both annexations were made on June 27, 1972.

"10. Prior to the effective date of said annexations as determined by said Boundary Commission, the plaintiffs in this case instituted a suit in the Circuit Court for the County of Ingham contesting the validity of the Boundary Commission's determination and secured an injunction staying the effective date of the annexations pending determination of the issue. The City of Midland intervened as a defendant in these proceedings.

"11. On September 11, 1973, the Ingham County Circuit Court, Judge Donald L. Reisig, filed an Opinion holding 1970 PA 219 unconstitutional by virtue of Article IV, Sections 24 and 25 of the Michigan Constitution.

"12. After filing of said Opinion, the City of Midland, Intervening Defendant, moved the Ingham County Circuit Court for an order returning the petition previously transferred to the Boundary Commission back to the Board of Commissioners of Midland County for the holding of an election as provided for in Section 9 of the Home Rule Act prior to the void attempt to amend same by 1970 PA 219; or, in the alternative, if by virtue of the provisions of 1972 PA 362 the Boundary Commission had acquired jurisdiction over annexation matters, to remand said petition to the Boundary Commission for the proper exercise of such jurisdiction. The Township requested the court to hold that 1972 PA 362 did not correct the constitutional defects in 1970 PA 219 and to avoid directing what the County Board should do with said petition as such issue was not before the court.

"13. Notwithstanding this, on November 9, 1973, the

court entered a Corrected Summary Judgment, a copy of which is attached hereto as Exhibit B. This Judgment ordered that the annexation petition transferred to the Boundary Commission from the Clerk of the County of Midland be returned by the Boundary Commission to the Clerk of Midland County for 'whatever action is deemed legally appropriate.'

"14. On November 20, 1973, the Midland County Board of Commissioners, by a 6 to 5 vote, ordered a special election under the provisions of Section 9 of the Home Rule Act as it existed prior to the enactment of the 1970 amendment which was held unconstitutional by the Ingham County Circuit Court. The minutes of said meeting are a part of the record on appeal.

"15. In accordance with the resolution of the Midland County Board of Commissioners, a special election was held in the City of Midland and the Township of Midland on February 5, 1974; 708 votes were cast against the annexation in the Township and 18 votes were cast in favor of the annexation in said Townships; 4,882 votes were cast in favor of the annexation within the City and 1,868 votes were cast against the annexation within the City. Whereupon, said annexation was declared to have passed, becoming effective April 1, 1974. No votes were cast from the area proposed to be annexed as it was uninhabited by any residents or qualified electors.

"16. Said election was held concurrently with a school election within a portion of the City of Midland and a portion of Midland Township. The date of said school election was set by resolution of the School Board in December to coincide with the annexation election, and the date was approved by the County Election Scheduling Committee on December 12. The Election Scheduling Committee did not act on the February 5 election date set by the Board of Commissioners' resolution of November 20, 1973.

"17. Registration notices were published in the City of Midland with regard to the annexation election and the school election on December 14 and December 28, 1973.

"18. Registration notices were published in the Town-

ship of Midland with regard to both the annexation and school elections on December 14 and December 28, 1973.

"19. Annexation election notices were published by the City of Midland on January 11, January 18, January 25, and February 1, 1974.

"20. Annexation election notices were published by the Township of Midland on the same dates.

"21. Annexation election notices were posted in the City of Midland on January 8 and January 10, 1974.

"22. On March 1, 1974, all parties to the Ingham County Circuit Court action were granted Leave to Appeal to the Court of Appeals.

"23. The within suit was instituted first to enjoin the annexation and, failing in this, was transferred as a matter in the nature of quo warranto to test the validity of the said annexation election." (Emphasis in original.)

The trial court ruled that plaintiffs were not entitled to a summary judgment, and, further, that the annexation election was valid. It further rendered an injunction pending appeal. Plaintiffs-appellants raise three issues which we consider in order.

I

*Do County Boards of Commissioners have any jurisdiction over annexation of territory to home rule cities under the laws and statutes of the State of Michigan?*

This Court has just previously ruled that 1970 PA 219 was unconstitutional. That act purported to amend the HRCA, giving exclusive jurisdiction over annexation petitions to home rule cities to the SBC. This act being invalid, such transfer of powers did not take place.

Plaintiffs assert that the SBCA, as amended by

1972 PA 362, grants exclusive jurisdiction over annexations to home rule cities to the SBC. Although the title to said amended act does include the word annexation, there is nothing in said act that confers exclusive jurisdiction over annexation matters to the SBC, except as contended by the plaintiffs as stated in their brief as follows:

"Section 9 of 1909 PA 279, as purported to be amended by 1970 PA 219 (MSA 5.2088), provides at subparagraphs (2) and (11) of said Section 9 as follows:

" '(2) Except as provided in subsections (1) and (8), a petition or resolution for annexation of territory shall be filed in the Lansing office of the State Boundary Commission. * * * '

" '(11) On and after the effective date of the 1970 amendments to this section, and so long as Act 191 of the Public Acts of 1968 is in effect, annexation of territory from a township or village to a home rule city shall be as provided in this section and no other means of annexation shall be effective.' "

We having ruled that 1970 PA 219 was unconstitutional, which we again reiterate here, the arguments of plaintiffs are untenable. The referred to statutory matter by the plaintiffs was not constitutional. We need not pass upon the constitutionality of 1972 PA 362, because even considering it as valid—exclusive jurisdiction of annexation to the home rule cities was not therein granted to the SBC. Having also ruled that annexations to home rule cities may be accomplished under the provisions of the HRCA in accord with previous Supreme Court decisions directly on point, we decline to alter our opinion, absent directions from our Supreme Court. *Village of Kingsford v Cudlip* and *Hall v Calhoun County Bd of Supervisors, supra.*

Plaintiffs also assert that section 9 of the HRCA, which provides in an annexation election for a

combined vote between electors of a city of more than 15,000 population and the balance of the township voting collectively, and an independent vote within the area to be annexed if electors reside in such area, is unconstitutional because it violates the equal protection clause of the state constitution.

Plaintiffs recognize in their brief, that municipalities are creatures of the Legislature and may be altered or done away with at the pleasure of the Legislature with or without a referendum right in the public involved. The trial court had the following to say in regards to this issue:

"Petitioners contend that we should construe that the annexation did not pass since the statutory scheme results in a denial of due process. In substance the contention is that the various breakdowns of voting procedures are arbitrary and capricious.

"To the extent that it is the 'one man, one vote' rewrite of the equal protection of the laws, we think that the respondents state it correctly, that the simple answer here is that that is exactly what is provided: each vote cast has the same weight of every other vote cast. In other words, to the extent that the total vote approves annexation, it carries according to the express statutory provisions which admittedly apply if the election be conducted according to the old provisions of the Home Rule Act. If it fails to carry, the majority vote rules.

"To the extent that it is argued that the Legislature must provide that the proposition must be carried in each governmental unit and that each governmental unit is entitled to a veto, we have no authority cited which persuades us that such is Michigan or Federal Law. The contra was expressly held in *Kalamazoo Township v Kalamazoo County Clerk,* 339 Mich 619; 64 NW2d 595 (1954), where the city outnumbered the township voters two to one and the objection that this 'constitutes an election in form rather than in fact' had no merit.

"We recognize that the trend is indeed as petitioners contend, that various categories relative to the election process are becoming suspect; resident requirements are being relaxed, for example, but not all order of classifications must be stricken down. If a line can be drawn, absent improper motive or capricious action, the legislative decision as to where to draw the line should be affirmed. In any event, as indicated under the facts of this case, it would seem that there is no need to throw the baby out with the bath water. If the Legislature deems it proper that all interested parties have an equal vote, we do not believe that the interested governmental units have any constitutional 'interest' that mandates that they are entitled to a veto over the proposal. We are not prepared to state that since this was done relative to certain classes of cases that this requires that the entire statute relative to annexations must be put in limbo."

The ruling of the trial court on this issue was correct and we feel bound by the case of *Kalamazoo Township v Kalamazoo County Clerk*, 339 Mich 619; 64 NW2d 595 (1954).

## II

*Did the Midland County Board of Commissioners have jurisdiction or authority to order an election on the question of annexation?*

Plaintiffs put a three-pronged attack on the procedure claiming (1) the petitions were drawn covering the 319 acres in such a manner so as to gerrymander and exclude all qualified electors from within the boundary and thereby prevent any independent vote therein, (2) the petitions were stale having been signed prior to February 15, 1968, preventing a basis for county jurisdiction in 1973, and (3) the map attached to the petitions is not clear and the description does not accurately describe the boundaries of the territory to be

annexed, as required by Sections 6 and 7 of the HRCA.

The trial court gave careful attention to objections of the plaintiffs and stated in ruling on the same, in his opinion as follows:

"Gerrymandering Issue: Petitioners object that the petition for annexation as it contains a description of the area to be incorporated is vague and indefinite and should not have been found to have met the statutory requirements. As we indicated in our opinion in the Bullock Creek matter, such considerations are, in our opinion, proper for consideration by the Board of Commissioners and we, in that proceeding, affirmed their decision in finding gerrymandering that voided the petition. Here there is no such finding by the Board of Commissioners. We also now consider an annexation question, not one of incorporation, and the criterion can conceivably be considerably different.

"Proceeding to an examination of the petition and the shape and size as set forth in the various exhibits, it is our opinion that gerrymandering is not evident. The irregularities in boundary shape are not patently unreasonable, they result in reasonable compactness and regularity of boundaries, they do not produce any obvious lack of contiguity and we are unable to say that the proposal is defective from the proofs as submitted to us. It is our finding that there has not been demonstrated the gerrymandering which mandates that the petition be found defective. We are not too sure but that the opinion of Judge Reisig is the law of the case as to this issue since he did rule on that contention adverse to the plaintiffs. However, if he had jurisdiction over the Boundary Commission, he had no jurisdiction as such over Midland County so the binding effect of his opinion, even on appeal, might be questionable. We reach, however, the same conclusion.

"The petitioners further object that the northerly boundary of the parcel to be annexed is set as the center line of the Tittabawassee River and it is claimed that this is indefinite and could very well vary from year to year. In this regard it is interesting to note that

the present boundary of the City of Midland is the same center line and that to the extent that there was any possible ambiguity rising out of the use of such line as a boundary line, that the proposed annexation would resolve any such ambiguity. To the extent that the annexation makes reference to an existing boundary, certainly common sense would indicate that the same descriptive line be used so that there would be no changes of voids or enclosures. We note that sovereign states frequently use rivers as boundaries.

"Objection further is made to the reference in the description to the eighth line. It is contended that such eighth line has no legal meaning. However, in our opinion, it is a line that has common meaning and understanding insofar as surveyors are concerned and many property descriptions contain such a reference. The use of the word is not so ambiguous that it cannot be resolved as to the line's location by simple application of generally accepted measurement standards. The objection, it is to be noted, was not raised with the Board of Commissioners and we do not have here a determination by them that the use of the term results in an ambiguity. Petitioners further object that the petition was initially filed in 1968 and because of the passage of time that it is now stale and the Board of Commissioners should not have acted upon such an old petition and submitted it to referendum. It may well be that despite the failure of the legislature to specify how long a petition should be considered to be pending before the Board of Commissioners, that there should be some cut off date. The same problem is extant relative to consideration of proposed amendments to the Federal Constitution, where the text writers suggest there is a point beyond which consideration is unreasonable. Absent a statutory limit, the usual standard the court would impose would be that of a reasonable time—or conversely, an inordinate delay. Is that present here?

"Under the facts of this case we note there were a number of pending petitions and litigation has followed at every turn and decision. It seems to us unreasonable and unfair to hold that the mere passage of time would

result in the petitions becoming ineffective and void. If so, objectors could accomplish their objects just by being obstreperous. It is argued that there has been a change of circumstances in that people have probably moved in and out of the area, including those who might be eligible to vote, but also including the petitioners themselves. It would appear to us, however, that the fact that a given petitioner may have moved from the area after his petitions have been filed, cannot be permitted to give him a veto power over the legal effect of the petitions once they have been filed with the considering body. It is therefore our conclusion that the Board of Commissioners was not obligated to have recently gone over the status of the petitions to determine who was still living in the area. If the petition was proper at the time it was filed, then it should not be necessary to continually demonstrate that the facts continue to be the same as they were as of the time that the petition was filed. This would have a bearing upon how long petitions should be held pending by the considering agency. Obviously, the legislative requirements concerning petitions relate to the time of filing in general and we concur that stale petitions should not be acted upon. However, as we have indicated in this particular case, because of its history, we find that the determination on the part of the Board of Commissioners that the petition was not stale, which determination is implicit in their action, was not unwarranted and we concur.

"The petition was filed long ago to be sure; on February 15, 1968, but then pending and apparently entitled to first consideration was the Bullock Creek incorporation petition covering the same property. Until final decision, including final court decision, further action certainly was contra-indicated. That delay was not unreasonable. Action thereafter on reliance upon apparent valid legislation by reference to the Boundary Commission followed with reasonable promptitude. On April 28, 1971 that Commission proceeded apace with public hearings and decision by June 27, 1972. The Ingham appeal was then properly disposed of by order of November 9, 1973 which was followed by prompt action of the Board of County Commissioners in setting an early election. We find no inordinate delay which whould *[sic]*

be held to operate to remove the efficacity of the petitions."

We adopt the trial court's reasoning and ruling on this issue. We also add that the annexation is *not* the annexation that was before the Court in the case of *Twp of Owosso v City of Owosso,* 385 Mich 587; 189 NW2d 421 (1971). In that case, the territory to be annexed had *40 sides and enclaves were created where voters resided.* This rendered the annexation invalid. In the instant case concerning the petitions for annexation of the 319 acres, no enclaves were created, and the common borders between the City of Midland and the parcel to be annexed extended for more than a mile. The area was compact as the trial judge duly found.

## III

*If the Midland County Board of Commissioners had annexation jurisdiction in the instant case, did the board exercise such jurisdiction in a legal and constitutional manner?*

### A

Plaintiffs assert that the election was invalid because the date of the election was not referred to and approved by the County Election Scheduling Committee, as required by § 639 of the Michigan Election Law. MCLA 168.639; MSA 6.1639, provides in pertinent part as follows:

"When a special election is called by a county * * * the proposed date of the election shall be submitted to a county election scheduling committee consisting of the county clerk and 3 other members appointed by the county board of commissioners. * * * The committee

shall determine if the proposed election date conflicts with any other scheduled election in the county. * * * [T]he commission * * * shall have the authority to disapprove an election date if an election is scheduled to be held in the same territory within 30 days of the proposed election date."

The purpose of the statute is to avoid conflict in the setting of dates of special elections in order to afford reasonable and proper opportunity to give notice to the voters of the closing of registration and to allow for the efficient conduct of the election by the municipal clerks.

The trial court ruled on this issue in the following manner:

"Objection further is made that the Board did not confer with the County Election Commission in setting the date of the election. The City of Midland's statement of fact points out that the County Election Scheduling Committee subsequently approved a special school election on the same date as the special election called for by the County. While no formal action was taken, it could be concluded that that body had no objection to the County-called special election. There is no showing of any objection made to them re such election. Is the election void for having failed to have been submitted to the County Election Commission?

"This issue was first raised in paragraph 11 of the petitioners amended complaint of March 5, 1974 when the attempt to set aside the results of the election was shifted to a quo warranto proceeding. The original complaint for injunctive relief objecting to the proceedings as filed on December 20, 1973 did not raise this issue. At that time the plaintiffs were seeking to prevent the election, but the procedural lapse was not pointed out in the petition or in this proceeding at any time, so far as we can tell from the records, until the issue was raised in the amended complaint filed after the election had been conducted.

"Under these circumstances, it would be our opinion

that the objection is without merit. Whether or not the election should have been scheduled without compliance with the statutory requirement of submission to the County Election Commission is, in our opinion, moot. There is no showing that the election as conducted was not otherwise properly conducted or that anyone was confused in any way, manner or form or that the manner of holding this election served to confuse the voting public in any manner. If the election should have been called, it was called in a manner that was substantially in accordance with the statute and it is our opinion that, under the circumstances, substantial compliance with the statute is sufficient."

We also rule that there was no showing that any voter was prejudiced of his right to vote, was misled in any way or that the result was in any way affected or changed. Absent such a showing, no prejudice has resulted. *Behrendt v Wilcox,* 277 Mich 232; 269 NW 155 (1936), and *Rutter v Handy #1 Fractional Sch Dist Bd,* 359 Mich 461; 102 NW2d 192 (1960). We agree with the trial court in its reasoning and ruling on this issue.

## B

For the first time on appeal, plaintiffs-appellants herein now assert that the proceedings before the Board of County Commissioners concerning its action in calling an election for the subject annexation is subject to Const 1963, art 6, § 28. This section provides as follows:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and or-

ders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

Paragraph 1 of appellants' statement of facts is here reiterated:

"On February 15, *1968,* petitions for annexation of approximately 319 acres as described in the Trial Exhibit A from Midland Township to the City of Midland were filed with the Board of Commissioners of Midland County bearing signatures which were subsequently, on November 20, *1973,* determined by the resolution of the Board of Commissioners of Midland County to satisfy the requirements of Section 6 of the Home Rule Act (1909 PA 279), Section 5.2085 MSA." (Emphasis in original.)

In said statement of facts there was no reference to any irregularity or insufficiency of the resolution calling for the election or the facts upon which said resolution was based.

The function of the incorporation of cities and villages is clearly set aside for the Legislature by Const 1963, art 7, § 21, and in carrying out the provisions of HRCA with respect to setting of elections, the County Board of Commissioners is clearly exercising a legislative, rather than a judicial function. In the affidavits filed in opposition to plaintiffs-appellants' motion for summary judgment, the board of commissioners had the reports of the township clerk, the township supervisor, the city clerk and the city assessor with respect to the qualifications of persons whose signatures appeared on the petitions. They also had the petitions for the purpose of review.

The provisions of the constitution cited by plaintiffs-appellants are not applicable to the subject

action of the County Board of Commissioners, nor is the quo warranto proceeding herein a judicial review of a quasi-judicial body. The HRCA makes this clear. Section 8 of the act provides in part: "After the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding." In any event, the burden in this action was upon the plaintiffs-appellants to show irregularity, if they claimed it existed.

Had plaintiffs-appellants claimed below that the County Board of Commissioners' action was subject to Const 1963, art 6, § 28, and that the action of the commissioners was faulty, the hearing on this question of fact should have been requested by plaintiffs-appellants, instead of a motion for summary judgment on facts which do not disclose any deficiency.

Evidently plaintiffs-appellants did assert below that the action of the Board of County Commissioners in setting the election was arbitrary and capricious for the trial judge ruled on this issue in the following manner:

"Petitioners contend that the record does not show that the Board of Commissioners gave proper consideration to all of the fact aspects of the petition and that therefore, their action was arbitrary and capricious. It is our opinion, however, that it is not the obligation of the Commission to show in all particularities what it is they did or what it is they find that adds up to a valid petition. Rather, we believe it is necessary for the record to affirmatively show that they have acted improperly since it will be presumed otherwise that there is a proper basis to their action. It is to be noted that the Board of Commissioners is a legislative body. We know of no requirement that in passing upon such petitions that each and every Commissioner be present at all times during an investigation. Reference to out-

side materials and information and reference to investigating sub-committees is, as far as we are concerned, a proper method and manner for a legislative body to proceed in considering a matter of this nature. It is sufficient if, in toto, the matter as submitted to them receives their proper consideration and, in fact, there is a factual basis and a legal basis for them to proceed. We find such factual and legal basis to be demonstrated here in the proofs."

We rule that plaintiffs-appellants' position on this issue is untenable and agree with the trial judge in determining that the call of the election for annexation in question was not deficient, based upon a claimed arbitrary and capricious action of the board.

Affirmed. No costs, a public question being involved.